United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 16, 1999 Decided January 28, 2000 

 No. 99-7073

 Jimmy L. Duncan, 
 Appellee

 v.

 Washington Metropolitan Area Transit Authority, 
 Appellant

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 95cv02360)

 Bruce P. Heppen argued the cause for the appellant. 
Cheryl C. Burke and Robert J. Kniaz were on brief for the 
appellant.

 Bruce M. Bender argued the cause for the appellee. Su-
zanne L. Lawrence entered an appearance.

 Before: Edwards, Chief Judge, Silberman and Henderson, 
Circuit Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Dissenting opinion filed by Chief Judge Edwards.

 Karen LeCraft Henderson, Circuit Judge: Washington 
Metropolitan Area Transit Authority (WMATA) challenges 
the district court's denial of judgment as a matter of law on 
the claims Jimmy Duncan brought under the Americans with 
Disabilities Act (ADA), 42 U.S.C. ss 12101 et seq. (1994), and 
for which a jury returned a verdict awarding Duncan $250,000 
in compensatory damages: $125,000 for the "decision not to 
reasonably accommodate [him]" and $125,000 "as a result of 
[WMATA's] decision to terminate [him]." Judgment on the 
Verdict, p p 7, 8. WMATA also challenges two post-trial 
orders granting attorney's fees and costs and one post-trial 
order granting backpay and prejudgment interest.

 We conclude that Duncan failed to establish he was dis-
abled and thus protected under the ADA and, therefore, 
reverse the district court's order denying judgment as a 
matter of law. We also vacate the jury verdict and the post-
trial orders noted above.

 I.

 Duncan, forty-seven years old at the time of trial, attended 
high school and trade school in electronics but completed 
neither. He has an employment history of unskilled labor 
positions, many requiring heavy lifting. He began working 
for WMATA in May 1986 as a custodian, a position that 
required him to lift between 75 and 100 pounds. Duncan 
then became an Automated Fare Collector (AFC) parts run-
ner in November 1991. He testified that 30 pounds was the 
heaviest lifting required and his testimony was corroborated 
by that of a co-worker. In early December 1992, as a result 
of another employee's grievance, Duncan was transferred 
involuntarily to the Elevator/Escalator branch (ELES) into a 
position requiring heavy lifting.

 From 1989 to 1992 Duncan sustained several back injuries 
including an off-duty automobile accident in February 1992. 
Some of the injuries required a number of weeks away from 
work or on light duty but in each instance Duncan was able to 
return to work without restriction. On December 16, 1992, 
working his third night in ELES, Duncan re-injured his back. 
Duncan reported the injury to his supervisor, John Weston, 
who referred him to WMATA's Associate Medical Director, 
Dr. Mary O'Donnell. Duncan also saw his orthopaedist, Dr. 
Harvey N. Mininberg. At that time, Dr. Mininberg limited 
Duncan's lifting to no more than 20 pounds. See Joint 
Appendix (JA) 60. After another visit in late January 1993, 
Dr. Mininberg confirmed the restriction. See id. 61.

 The medical restriction precluded Duncan from returning 
to his job in ELES. Weston told Duncan that no light duty 
position was available in ELES and Duncan was placed on 
leave without pay. Between December 1992 and August 1993 
Duncan periodically contacted Weston and Weston's supervi-
sor to inquire about light-duty work. Duncan also applied for 
two vacancies in his former AFC position, one in March and 
the other in July. Apparently Duncan's first application was 
not forwarded to the decisionmaker, Charles Beuttner, but 
the second was. Beuttner declined to interview Duncan for 
the second position after learning that Duncan was in the 
process of being terminated, see infra, and was "physically 
disqualified." JA 307-08.

 In mid-August 1993 Duncan received a letter from Weston 
requesting that he schedule an appointment with Dr. O'Don-
nell and take with him all medical records dating from 
February 1993 relevant to restrictions on duty as a parts 
runner, including a statement from his treating physician 
regarding his current condition. Duncan returned to Dr. 
Mininberg who referred him to a neurologist he had seen 
before, Dr. Najmaldin Karim. Dr. Karim was out of town 
until September 1993. At his August 23 appointment with 
Dr. O'Donnell, she was annoyed by his failure to bring the 
requested information, told him to leave and said that he 
likely would lose his job. Ultimately, Dr. Karim issued the 
requested letter of evaluation on September 10, 1993. The 

letter stated that Duncan could not perform heavy lifting but 
could work in the AFC position. Believing WMATA already 
had decided to fire him, however, Duncan never submitted 
the letter to WMATA. Weston had drafted a letter of 
termination on August 31, citing failure to respond to re-
quests from WMATA's medical office but the letter was not 
sent until October 7, 1993.

 Due to his impairment, Duncan could not perform any of 
the jobs he had had before being employed by WMATA. He 
inquired about some truck driving positions and eventually 
acquired a light-duty, part-time position at Hertz Corporation 
where he earned less money than he had earned with 
WMATA.

 II.

 We review de novo the trial court's denial of a motion for 
judgment as a matter of law or, in the alternative, for a new 
trial. See Curry v. District of Columbia, 195 F.3d 654, 658-
59 (D.C. Cir. 1999). We will not disturb a jury verdict 
"unless the evidence and all reasonable inferences that can be 
drawn therefrom are so one-sided that reasonable men and 
women could not disagree on the verdict." Id. at 659 (quot-
ing Smith v. Washington Sheraton Corp., 135 F.3d 779, 782 
(D.C. Cir. 1998)). Evidence supporting the verdict, however, 
must be "more than merely colorable; it must be significantly 
probative." Id. (quoting Smith, 135 F.3d at 782).

 In an ADA case with no direct evidence of discrimination 
and where the defendant denies that its decisions were moti-
vated by the plaintiff's disability, this court uses the familiar 
burden-shifting framework set out in McDonnell Douglas 
Corp. v. Green, 411 U.S. 792 (1973). See Marshall v. Federal 
Express Corp., 130 F.3d 1095, 1099 (D.C. Cir. 1997). Under 
that framework, an ADA plaintiff must prove that "he had a 
disability within the meaning of the ADA, that he was 'quali-
fied' for the position with or without a reasonable accommoda-
tion, and that he suffered an adverse employment action 
because of his disability." Swanks v. WMATA, 179 F.3d 929, 
934 (D.C. Cir. 1999). Thus "the threshold issue is whether 

plaintiff had a 'disability.' " E.g., Weber v. Strippit, Inc., 186 
F.3d 907, 912 (8th Cir. 1999); accord Smith v. Midline Brake, 
Inc., 180 F.3d 1154, 1161 (10th Cir. 1999).

 The ADA defines a "disability" as "a physical or mental 
impairment that substantially limits one or more of the major 
life activities of [an] individual."1 42 U.S.C. s 12102(2)(A). 
In analyzing whether a plaintiff has established a disability 
under this provision, the United States Supreme Court fol-
lows three steps: (1) it considers whether the plaintiff's 
condition was a physical impairment; (2) it identifies the life 
activity upon which plaintiff relies and determines whether it 
constitutes a major life activity under the ADA; and (3) it 
decides whether the impairment substantially limited the 
major life activity. See Bragdon v. Abbott, 524 U.S. 624, 631 
(1998). The parties to this appeal agree that Duncan's degen-
erative disc disease was a physical impairment and that 
"working" is the activity involved and that it is a major life 
activity under the ADA. See, e.g., Brief of Appellant, at 16; 
Brief of Appellee, at 15-19. Therefore, the issue is whether 
Duncan's back impairment substantially limited his ability to 
work. The Supreme Court recently considered what "sub-
stantially limits" means in the context of one's ability to work 
in Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2150-51 
(1999). The Court first noted that the term "substantial[ ]" 
suggests "considerable" or "specified to a large degree." 119 
S. Ct. at 2150. It noted the definition of "substantially limits" 
as "unable to perform" or "significantly restricted" contained 
in the regulations of the Equal Employment Opportunity 
Commission (EEOC). Id. at 2150-51 (quoting 29 C.F.R. 
ss 1630.2(j)(1)(i), (ii) (1998)). The Court then clarified what a 
plaintiff must show to demonstrate that an impairment sub-
stantially limited his ability to work:

 When the major life activity under consideration is that 
 of working, the statutory phrase "substantially limits" 
 
__________
 1 The ADA also protects individuals who have "a record of such 
an impairment" and those whose employers "regard[ ] as having 
such an impairment." 42 U.S.C. s 12102(2). Duncan makes no 
claim under either alternative approach.

 requires, at a minimum, that plaintiffs allege they are 
 unable to work in a broad class of jobs.... To be 
 substantially limited in the major life activity of working, 
 then, one must be precluded from more than one type of 
 job, a specialized job, or a particular job of choice. If 
 jobs utilizing an individual's skills (but perhaps not his or 
 her unique talents) are available, one is not precluded 
 from a substantial class of jobs. Similarly, if a host of 
 different types of jobs are available, one is not precluded 
 from a broad range of jobs.
 
Id. at 2151 (emphasis added). The Sutton Court stressed 
that "whether a person has a disability under the ADA is an 
individualized inquiry," id. at 2147 (citing Bragdon, 524 U.S. 
624), and noted several factors courts "should consider" when 
making this determination, including the accessible geograph-
ical area and the number of similar jobs within that area from 
which the individual also is disqualified. Id. at 2151. Ulti-
mately in Sutton, the Court held that the plaintiffs' disqualifi-
cations from their current jobs due to impairment did not 
establish that they were substantially limited in their ability 
to work, particularly where other jobs utilizing their skills 
were available to them. See id.

 Claiming he presented evidence sufficient to sustain the 
jury verdict, Duncan points to the testimony of Drs. Minin-
berg and Karim that his degenerative disc disease was a 
permanent condition necessitating a permanent restriction on 
lifting, as well as his educational background, lack of skills, 
lack of experience outside heavy labor and inability to find 
similar employment. Duncan also cites the EEOC's interpre-
tive guidelines which the Supreme Court noted in Sutton and 
which provide in part:

 [A]n individual does not have to be totally unable to work 
 in order to be considered substantially limited in the 
 major life activity of working. An individual is substan-
 tially limited in working if the individual is significantly 
 restricted in the ability to perform a class of jobs or a 
 broad range of jobs in various classes, when compared 
 with the ability of the average person with comparable 
 
 qualifications to perform those same jobs. For example, 
 an individual who has a back condition that prevents 
 the individual from performing any heavy labor job 
 would be substantially limited in the major life activity 
 of working because the individual's impairment elimi-
 nates his or her ability to perform a class of jobs. This 
 would be so even if the individual were able to perform 
 jobs in another class, e.g., the class of semi-skilled jobs.
 
29 C.F.R. Pt. 1630.2(j), App. (emphasis added).

 WMATA insists that Duncan failed to prove his degenera-
tive disc disease substantially impaired his ability to work. 
While conceding that Duncan, through medical testimony, 
established a lifting restriction of approximately 20 pounds,2 
WMATA argues he did not establish, as he must, that he was 
thereby disqualified from a "broad class of jobs" as Sutton 
instructs. WMATA cites Duncan's failure to proffer expert 
testimony from a vocational rehabilitation specialist and testi-
mony or statistical evidence regarding the numbers of jobs 
from which he was disqualified. Other than relying on his 
limited educational background and work experience, Duncan 
offers only his testimony that he inquired about some truck 
driving positions.

 Other circuits have addressed claims involving arguments 
similar to Duncan's and have found the claims faulty for lack 
of evidence regarding the jobs the plaintiffs' impairments 
preclude them from performing.3 In Colwell v. Suffolk Coun-

__________
 2 Dr. Karim's September 1993 evaluation, which Duncan did not 
submit to WMATA, and the testimony of both doctors at trial 
indicated that the previous 20-pound restriction was a good guide-
line but that Duncan could also lift somewhat heavier objects.

 3 The dissent cites cases from other circuits finding triable issues 
of fact on records arguably similar to the record here. Most of 
those cases predate Sutton, however. See Diss. Op. at 8-11. The 
one case the dissent cites which was decided after Sutton, Welling-
ton v. Lyon County School District, 187 F.3d 1150 (9th Cir.1999), 
did not cite Sutton. A later opinion from that circuit, Broussard v. 
University of California, 192 F.3d 1252 (9th Cir.1999), does cite 
Sutton and is consistent with our resolution here. In Broussard 

ty Police Department, 158 F.3d 635, 644-45 (2d Cir. 1998), the 
Second Circuit held that the plaintiffs, who complained of 
limitations resulting from back injuries, failed to show they 
were significantly restricted from working in a class or broad 
range of jobs. With regard to one plaintiff, the court said 
that "[w]ithout specific evidence about the kinds of jobs from 
which [an] impaired individual is disqualified, the jury could 
not perform the careful analysis that is necessary to deter-
mine that [plaintiff] was substantially limited in his ability to 
work." 158 F.3d at 645 (internal quotation marks omitted). 
Accord Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th 
Cir. 1997). Similarly, in Bolton v. Scrivener, Inc., 36 F.3d 939 
(10th Cir. 1994), the court examined the medical evidence 
tending to establish that the plaintiff suffered from a perma-
nent partial disability but held it insufficient. Noting that 
such evidence "does not address [plaintiff's] vocational train-
ing, the geographical area to which he has access, or the 
number and type of jobs demanding similar training from 
which [he] would also be disqualified," the Tenth Circuit 
found the medical evidence relevant to the nature, severity, 
duration and impact of the injury but insufficient to show how 
plaintiff's ability to perform a class or broad range of jobs 
was affected. Bolton, 36 F.3d at 944. See also Muller v. 
Costello, 187 F.3d 298, 313 (2d Cir. 1999) (plaintiff's failure to 
present evidence that he was precluded from jobs other than 
correctional officer in his geographic area and plaintiff's 
insistence that his class of jobs be limited to correctional 

__________
the court stated that surviving a motion for summary judgment 
"require[s] at least some evidence from which one might infer that 
[plaintiff] faced 'significant restrictions' in her ability to meet the 
requirements of other jobs." Id. at 1259 (quoting Davidson v. 
Midelfort Clinic, Ltd., 133 F.3d 499, 507 (7th Cir.1998)). Accord-
ingly, the court declared that the existence of a genuine issue of fact 
turned on its evaluation of the declaration of a vocational rehabilita-
tion specialist, which was "the only evidence which might show that 
[plaintiff] is barred from significant percentages of available em-
ployment in the [geographical] area" because of her impairment. 
192 F.2d at 1257. In the end, the court found that the declaration 
lacked a medical foundation and affirmed summary judgment in 
favor of the defendant.

officer "compelled" holding of insufficient evidence of substan-
tial limitation on major life activity of working).

 Several cases involve a plaintiff with a limitation similar to 
Duncan's. In Thompson v. Holy Family Hospital, 121 F.3d 
537 (9th Cir. 1997), the Ninth Circuit addressed a lifting 
restriction of no more than 25 pounds on a regular basis and 
more only rarely. The court found the plaintiff failed to 
prove a substantial limitation despite having established the 
lifting restriction: "[Plaintiff] points to no evidence that the 
restrictions ... preclude her from engaging in an entire class 
of jobs. Nor does she offer the information relevant to this 
particularized determination." 121 F.3d at 540. The Thomp-
son court also cited decisions from other circuits finding 
similar lifting restrictions not substantially limiting. See id. 
(citing Williams v. Channel Master Satellite Sys., Inc., 101 
F.3d 346, 349 (4th Cir. 1996) (25-pound lifting limitation, as 
matter of law, "does not constitute a significant restriction on 
one's ability to lift, work, or perform any other major life 
activity"); Aucutt v. Six Flags Over Mid-America, Inc., 85 
F.3d 1311, 1319 (8th Cir. 1996) (25-pound lifting restriction 
did not substantially limit any major life activities); Ray v. 
Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (plaintiff not 
substantially impaired by limitation on heavy lifting where he 
otherwise could lift and reach)); see also Snow, 128 F.3d at 
1207 ("[A] general lifting restriction imposed by a physician, 
without more, is insufficient to constitute a disability within 
the meaning of the ADA.").

 Duncan attempts to distinguish himself from the plaintiffs 
in the cases above with the claim that he established substan-
tial limitation by showing he has a limited educational back-
ground, is unskilled and has performed only jobs requiring 
heavy lifting. Duncan's third distinguishing factor deserves 
little credence in light of his experience as an AFC parts 
runner, a position that requires no heavy lifting (and that he 
claims he is able to perform without assistance). On the 
whole, however, Duncan simply offers no evidence we can 
weigh in using the factors the Supreme Court tells us to use. 
The evidence he does offer is his testimony that he inquired 
about some truck driving positions, see JA 136-38, but he 

could name no other kind of job he investigated as part of his 
effort to find employment. See id. 138; see also Sutton, 119 
S. Ct. at 2151 ("If jobs utilizing an individual's skills (but 
perhaps not his or her unique talents) are available, one is not 
precluded from a substantial class of jobs.").

 In short, Duncan completed only half of the puzzle. He 
established that he had an impairment that may have sub-
stantially limited his ability to work but he failed to show that 
his impairment in fact did substantially limit his ability to 
work. Duncan relied on his limited educational background 
and the fact that most of his earlier unskilled work involved 
heavy lifting which he could no longer perform. Duncan, 
however, did not demonstrate what jobs were available to 
unskilled workers in his geographical area and thus could not 
show that his impairment precluded him from performing 
those jobs.4 Duncan's limited "search" for another job hardly 

__________
 4 We reject the example included in the EEOC interpretive 
guidelines regarding an individual with a back condition preventing 
him from performing heavy labor because it is at odds with Sutton. 
Guiding our consideration--and rejection--of the interpretive 
guidelines found at 29 C.F.R. Pt. 1630.2(j), App., is the Supreme 
Court's acknowledgment that "[n]o agency ... has been given 
authority to issue regulations implementing the generally applicable 
provisions of the ADA," Sutton, 119 S. Ct. at 2145 (citations 
omitted), coupled with its decision not to reach the issue of what 
deference, if any, courts owe the EEOC regulations. See id. 
("Because both parties accept these regulations as valid, and deter-
mining their validity is not necessary to decide this case, we have no 
occasion to consider what deference they are due, if any."). Al-
though we defer to EEOC regulations where appropriate, see, e.g., 
Bell v. Brown, 557 F.2d 849, 855 (D.C. Cir. 1977) ("[A]n administra-
tive interpretation of a statute by an agency entrusted with its 
administration commands great deference in the courts."), we de-
cline to do so with its interpretive guidelines where, as here, they 
lead to a result contrary to the one Supreme Court precedent leads 
to. See Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 70 n.6 
(1986) ("EEOC guidelines are properly accorded less weight than 
administrative regulations declared by Congress to have the force 
of law."); see generally Skidmore v. Swift & Co., 323 U.S. 134 
(1944) (weight of agency's interpretation of statute "will depend 

informs us what positions were generally available in his 
geographic area for unskilled workers, much less for workers 
with a lifting restriction like his. Not only have our sister 
circuits required this type of evidence but the Supreme Court 
has told lower courts to consider these factors when making 
individualized determinations of disability. See Sutton, 119 
S. Ct. at 2151. The evidence Duncan offered to establish that 
his impairment substantially limited his ability to work is no 
more than "merely colorable" and it is not significantly proba-
tive. Curry v. District of Columbia, 195 F.3d 654, 659 (D.C. 
Cir. 1999). Therefore, we find the evidence insufficient to 
support the jury's necessary finding that Duncan was a 
person with a disability under the ADA. Accordingly, Dun-
can's claim fails as a matter of law.

 For the foregoing reasons, the order of March 26, 1998 
denying WMATA's motion for judgment as a matter of law is 
reversed. The judgment on the jury verdict entered May 29, 
1997 is vacated, as are the district court's post-trial orders 
awarding attorney's fees and costs and granting Duncan 
backpay and prejudgment interest.

 So ordered.

__________
upon the thoroughness evident in its consideration, the validity of 
its reasoning, its consistency with ... later pronouncements") 
(emphasis added). We therefore decline to follow the EEOC's 
guidelines here.

 Edwards, Chief Judge, dissenting: On the record at hand, 
there was sufficient evidence for the jury to conclude that Mr. 
Duncan was disabled under the Americans with Disabilities 
Act ("ADA"). The majority opinion proposes a standard of 
proof in ADA cases that is unprecedented and unsupported. 
The case law from our sister circuits does not support the 
majority's position. And recent Supreme Court decisions 
construing the ADA cannot be stretched to accommodate the 
majority's rigid formulation of a plaintiff's burden of proof 
under the statute. The jury's verdict in this case should 
stand.

 I. Analysis

A. Standard of Review

 The defendant claims no legal error--i.e., no alleged im-
proper exclusions or admissions of evidence and no alleged 
faulty jury instructions. If this case involved legal error that 
was found not to be harmless, we would merely remand for a 
new trial pursuant to the correct legal standard. See, e.g., 
Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1312 
(D.C. Cir. 1998) (remanding for a new trial because of errone-
ous exclusion of evidence). The defendant here seeks much 
more, however, claiming that the jury verdict should be set 
aside and judgment entered against the plaintiff for lack of 
sufficient evidence. In other words, in asking this court to 
issue a judgment of law in its favor, the defendant seeks to 
have us " 'intrude[ ] upon the jury's domain.' " McNeal v. 
Hi-Lo Powered Scaffolding, Inc., 836 F.2d 637, 640 (D.C. Cir. 
1988) (quoting Carter v. Duncan-Higgins, Ltd., 727 F.2d 
1225, 1227 (D.C. Cir. 1984)). This is something that a court 
will rarely do, because neither the trial judge nor an appellate 
court may " 'usurp[ ] the prime function of the jury as the 
trier of the facts.' " Id. at 646 (quoting Lind v. Schenley 
Indus., 278 F.2d 79, 90 (3d Cir. 1960) (en banc)); see also 
Stenograph, L.L.C. v. Bossard Assoc., 144 F.3d 96, 100 (D.C. 
Cir. 1998) (affirming district court's denial of a judgment as a 
matter of law for defendants); Burns v. Washington Metro. 
Area Transit Auth., 114 F.3d 219, 221 (D.C. Cir. 1997) (per 
curiam) (reversing magistrate's grant of a judgment as a 
matter of law for defendant); Barbour v. Merrill, 48 F.3d 

1270, 1277 (D.C. Cir. 1995) (affirming district court's denial of 
defendant's motion for a judgment as a matter of law); 
Mackey v. United States, 8 F.3d 826, 830 (D.C. Cir. 1993) 
(reversing district court's grant of a judgment as a matter of 
law for defendant); Parker v. District of Columbia, 850 F.2d 
708, 711 (D.C. Cir. 1988) (giving jury awards "the utmost of 
deference and respect") (internal quotation marks omitted). 
Under well-established case law that is designed " 'to protect 
the litigants' right to jury trial,' " McNeal, 836 F.2d at 647 
(quoting Lind, 228 F.2d at 90), the courts are strictly limited 
from either granting a new trial or granting a motion for 
judgment as a matter of law on the grounds that the jury's 
verdict was against the weight of the evidence. To this end, 
the law is clear that a verdict "will withstand challenge unless 
the evidence and all reasonable inferences that can be drawn 
therefrom are so one-sided that reasonable men and women 
could not disagree on the verdict." Swanks v. Washington 
Metro. Area Transit Auth., 179 F.3d 929, 933 (D.C. Cir. 1999) 
(internal quotation marks omitted), cert. denied, 68 U.S.L.W. 
3389 (U.S. Dec. 13, 1999). In light of this very narrow 
standard of review, there is no basis upon which to set aside 
the jury verdict in favor of Mr. Duncan.

B. The ADA's Approach to Substantial Limitation of the 
 Major Life Activity of Working

 The ADA defines a disability as, inter alia, "a physical or 
mental impairment that substantially limits one or more of 
the major life activities of [an] individual." 42 U.S.C. 
s 12102(2)(A) (1994). Mr. Duncan's back condition consti-
tutes a physical "impairment" under the statute. The only 
question at issue here is whether he provided sufficient 
evidence for a reasonable jury to conclude that his impair-
ment "substantially limits" any of his major life activities.

 Equal Employment Opportunity Commission regulations 
define "major life activities," nonexhaustively, as "caring for 
oneself, performing manual tasks, walking, seeing, hearing, 
speaking, breathing, learning, and working." 29 C.F.R. 
s 1630.2(i) (1999). Mr. Duncan claims that his back condition 

substantially limits his ability to work. The regulations say 
that, with respect to working, "substantially limits" means

 significantly restricted in the ability to perform either a 
 class of jobs or a broad range of jobs in various classes as 
 compared to the average person having comparable 
 training, skills and abilities. The inability to perform a 
 single, particular job does not constitute a substantial 
 limitation in the major life activity of working.
 
Id. s 1630.2(j)(3)(i).

 The regulations also indicate that

 the following factors may be considered in determining 
 whether an individual is substantially limited in the ma-
 jor life activity of "working":
 
 (A) The geographical area to which the individual has 
 reasonable access;
 
 (B) The job from which the individual has been dis-
 qualified because of an impairment, and the number 
 and types of jobs utilizing similar training, knowledge, 
 skills or abilities, within that geographical area, from 
 which the individual is also disqualified because of the 
 impairment (class of jobs); and/or
 
 (C) The job from which the individual has been dis-
 qualified because of an impairment, and the number 
 and types of other jobs not utilizing similar training, 
 knowledge, skills or abilities, within that geographical 
 area, from which the individual is also disqualified 
 because of the impairment (broad range of jobs in 
 various classes).
 
Id. s 1630.2(j)(3)(ii) (emphasis added).

 The question that we face is whether the "evidence and all 
reasonable inferences that can be drawn therefrom are so 
one-sided that reasonable men and women could not dis-
agree," Swanks, 179 F.3d at 933 (internal quotation marks 
omitted), that Mr. Duncan was not significantly restricted in 
his ability to perform either a class of jobs or a broad range 
of jobs. The majority essentially holds that, because Mr. 

Duncan provided no quantitative evidence detailing the rele-
vant job market, no reasonable juror could conclude that he 
was significantly restricted in his ability to perform either a 
class or a broad range of jobs. In my view, the majority asks 
too much of an ADA plaintiff, for neither the statute, regula-
tions, nor case law require quantitative evidence of the sort 
that the majority here demands.

C. The Case Law From Our Sister Circuits

 No relevant cases from within this circuit apply to the 
question before this panel: What quantum of evidence is 
required simply to reach the jury on the question of whether 
a plaintiff is substantially limited in the major life activity of 
working? The relevant law from our sister circuits, however, 
compels the conclusion that the majority has answered this 
question incorrectly.

 It is beyond peradventure that a plaintiff cannot establish 
that he is substantially limited in his ability to work simply by 
showing that he is disqualified from one particular job. See 
Sutton v. United Airlines, Inc., 119 S. Ct. 2139, 2151 (1999). 
At the same time, however, courts do not require ADA 
plaintiffs to prove that almost all jobs are outside their reach 
in order to avoid summary judgment or a judgment as a 
matter of law. See DePaoli v. Abbott Labs., 140 F.3d 668, 672 
(7th Cir. 1998) ("[A]n employer cannot avoid liability by 
showing that the employee is still generally capable of doing 
some economically valuable work in the national economy."). 
Rather, courts require "at least some evidence from which 
one might infer that [the plaintiff] faced 'significant restric-
tions' in her ability to meet the requirements of other jobs." 
Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 507 (7th Cir. 
1998) (describing what plaintiff must do to defeat a motion for 
summary judgment); see also Swain v. Hillsborough County 
Sch. Bd., 146 F.3d 855, 858 (11th Cir. 1998) ("Although a 
plaintiff seeking recovery under the ADA is not required to 
provide a comprehensive list of jobs which she cannot per-
form, the person must provide some evidence beyond the 
mere existence and impact of a physical impairment to sur-
vive summary judgment.").

 In determining what "class of jobs" is relevant for deciding 
whether the plaintiff is substantially limited in his ability to 
work, the analysis must focus on the personal characteristics 
of the particular plaintiff. Thus, a court must reasonably look 
to a plaintiff's "expertise, background, and job expectations." 
Webb v. Garelick Mfg. Co., 94 F.3d 484, 487 (8th Cir. 1996). 
Indeed, as one court has commented, "it is not easy to 
envision how any other approach could be taken." Mondze-
lewski v. Pathmark Stores, Inc., 162 F.3d 778, 784 (3d Cir. 
1998) (adopting approach "under which an individual's train-
ing, skills, and abilities are taken into account in determining 
whether the individual is substantially limited in the major 
life activity of working").

 I can find no decision in which an appellate court has held 
that an ADA plaintiff must present evidence similar to that 
required by the majority in the instant case. The contrast 
between the majority's stance and that taken by most other 
courts is best demonstrated by considering the justifications 
cited by courts that have granted summary judgment or a 
judgment as a matter of law for defendants in disability 
discrimination cases.

 An obvious situation in which courts have granted summary 
judgment or a judgment as a matter of law in favor of a 
defendant arises where the plaintiff fails to allege exclusion 
from a sufficiently broad class of jobs. See Muller v. Costello, 
187 F.3d 298, 313 (2d Cir. 1999) (stating that the category of 
"correctional officer" was not a "class of jobs" under the 
ADA); Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 
861 (5th Cir. 1999) (finding position of pharmacist not to be a 
class of jobs); Patterson v. Chicago Ass'n for Retarded 
Citizens, 150 F.3d 719, 725-26 (7th Cir. 1998) (finding insuffi-
cient evidence of a substantial limitation where plaintiff was 
only disqualified from one sort of teaching position); Bridges 
v. City of Bossier, 92 F.3d 329, 334-36 (5th Cir. 1996) (finding 
that the category of firefighting jobs is not a "class of jobs"); 
Daley v. Koch, 892 F.2d 212, 215 (2d Cir. 1989) ("Being 
declared unsuitable for the particular position of police officer 
is not a substantial limitation of a major life activity."). This 
is not the situation here. Mr. Duncan demonstrated, with no 

serious dispute, that he was precluded from performing jobs 
requiring medium, heavy, and very heavy lifting; this is a 
sufficiently broad class of jobs to satisfy the requirements of 
the statute. Cf. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 
303-04 (4th Cir. 1998) (finding maintenance supervisory work 
to be a class of jobs); DePaoli, 140 F.3d at 673 (considering 
"any assembly line job that required repetitive movement" to 
be a class of jobs).

 Another obvious situation in which courts have found evi-
dence insufficient to go to the jury arises where the plaintiff 
was able to secure employment similar to that from which he 
was allegedly disabled. See Gutridge v. Clure, 153 F.3d 898, 
901 (8th Cir. 1998) (emphasizing fact that plaintiff found other 
similar employment in finding no evidence of a substantial 
limitation in the major life activity of working), cert. denied, 
119 S. Ct. 1758 (1999); Patterson, 150 F.3d at 726 (finding 
insufficient evidence of a substantial limitation where plaintiff, 
upon termination, became employed with the Chicago school 
system); Halperin v. Abacus Tech. Corp., 128 F.3d 191, 200 
(4th Cir. 1997) (finding insufficient evidence to defeat a 
motion for summary judgment where "there is absolutely no 
indication that Halperin's lifting restriction significantly limits 
his ability to perform a wide range of jobs" especially where 
the record showed that Halperin could, and did, "find compa-
rable employment with a different employer"); Zirpel v. 
Toshiba America Info. Sys., Inc., 111 F.3d 80, 81 (8th Cir. 
1997) (finding no substantial limitation where plaintiff "has 
had three jobs since her discharge, and she currently holds a 
quality control position nearly identical to the one she held at 
Toshiba"); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 
1994) (finding no substantial limitation where plaintiff "pre-
sented no evidence that her allergy [to tobacco smoke] fore-
closed her generally from obtaining jobs in her field" and 
where defendant offered her a position in her field in a 
nearby office); see also Heilweil v. Mount Sinai Hosp., 32 
F.3d 718, 724 (2d Cir. 1994) (affirming grant of summary 
judgment for defendant where plaintiff had a master's degree 
and had been gainfully employed since receiving her degree). 
In this case, Mr. Duncan and his physicians testified that he 

was unable to perform jobs similar to that from which he was 
fired. After moving out of his apartment because of his 
inability to pay rent, Mr. Duncan eventually took a part-time 
light-duty job with a rental car company in which he earns 
approximately one-third of his previous salary.

 The majority focuses attention, however, on a few decisions 
that mention a lack of quantitative evidence with respect to 
the relevant job market in holding that a plaintiff failed to 
offer sufficient proof for a jury to conclude that he or she was 
disabled. None of these cases can be stretched to support 
the majority's apparent per se requirement that an ADA 
plaintiff provide quantitative evidence detailing the job mar-
ket. Rather, they establish the relevance, not the necessity, 
of such evidence.

 For example, the instant case is easily distinguishable from 
Thompson v. Holy Family Hospital, 121 F.3d 537 (9th Cir. 
1997) (per curiam). The Thompson court did not treat 
detailed statistical evidence as a sine qua non of an ADA 
claim, but focused on the plaintiff's failure to provide job 
market evidence in the face of the defendant's proffer of an 
affidavit from a vocational counselor stating that the plaintiff, 
a nurse, remained qualified for a number of registered nurse 
positions. See id. at 540 (noting, in addition, that plaintiff 
remained employed in the health care industry). The defen-
dant made no such showing here.

 Similarly, in Bolton v. Scrivner, 36 F.3d 939 (10th Cir. 
1994), the court noted the lack of quantitative evidence as well 
as the lack of any evidence regarding the plaintiff's vocational 
training and the geographical area to which he had access. 
See id. at 944. The Bolton court nowhere suggested that 
detailed quantitative evidence on the relevant job market was 
essential to the plaintiff's case. Here, apparently contrary to 
the plaintiff in Bolton, Mr. Duncan did provide testimony 
regarding his work experience, education, and vocational 
training.

 The Muller decision is also distinguishable on its facts. In 
Muller, the defendant had identified several jobs for which 
the plaintiff remained qualified, and the plaintiff stubbornly 

insisted that "correction officer" was a class of jobs. Because 
the plaintiff presented no evidence that he was precluded 
from jobs other than correction officer, the court had no real 
choice but to issue a judgment as a matter of law for the 
defendant. See 187 F.3d at 313.

 Finally, the language taken by the majority from Colwell v. 
Suffolk County Police Department, 158 F.3d 635, 645 (2d Cir. 
1998), cert. denied, 119 S. Ct. 1253 (1999), is not inconsistent 
with a jury verdict in favor of Mr. Duncan. Unlike the 
plaintiff in Colwell, whose "only evidence concerned the gen-
eral restrictions imposed by his doctor," id., Mr. Duncan also 
provided evidence as to his education and vocational history. 
That the plaintiff in Colwell was faulted for not providing 
evidence of the "kinds of jobs," id. (internal quotation marks 
omitted), from which he was disqualified does not mean that 
the Colwell court expected detailed quantitative evidence of 
the relevant job market. There is no indication that the 
Second Circuit would have been dissatisfied if the plaintiff 
had simply provided more and better qualitative evidence 
from which a jury could have inferred a substantial limitation 
in his ability to work.

 Most of the decisions from our sister circuits have found a 
triable issue of fact regarding a plaintiff's disability without 
even mentioning quantitative evidence detailing the relevant 
job market. See Mustafa v. Clark County Sch. Dist., 157 
F.3d 1169, 1175 (9th Cir. 1998) (per curiam) (finding that 
plaintiff was substantially limited in his ability to work be-
cause of depression, post-traumatic stress disorder, and panic 
attacks, while referring to no quantitative vocational evi-
dence); Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 
155 F.3d 775, 781 (6th Cir. 1998) (finding genuine issue of 
material fact regarding whether plaintiff's psoriasis substan-
tially limited her ability to work with no reference to evidence 
regarding job availability); Baert v. Euclid Beverage, Ltd., 
149 F.3d 626, 630 (7th Cir. 1998) (finding plaintiff's evidence 
sufficient to overcome summary judgment where he testified 
to potential hospitalization due to insulin-dependent diabetes); 
Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998) 
(finding, in affirming district court's denial of employer's 

motion for a judgment as a matter of law, that the jury could 
have reasonably concluded that plaintiff's depression, testified 
to by plaintiff and physician, "substantially impaired the 
major life activity of working," while referring to no evidence 
regarding classes of jobs for which she was disqualified); 
Cline, 144 F.3d at 303-04 (finding a jury verdict of intentional 
discrimination under the ADA supportable where plaintiff 
showed that he was disqualified from maintenance superviso-
ry work, and where the court made no mention of vocational 
evidence); Gilday v. Mecosta County, 124 F.3d 760, 765 (6th 
Cir. 1997) (finding sufficient evidence to create a question of 
fact as to whether plaintiff's diabetes is a disability under the 
ADA because plaintiff's condition made him irritable and 
unable to cooperate with co-workers, an ability "necessary for 
all but the most solitary of occupations," without reference to 
quantitative vocational evidence); Best v. Shell Oil Co., 107 
F.3d 544, 548 (7th Cir. 1997) (finding that summary judgment 
for defendant was improper even though the record did not 
show how many jobs plaintiff was disqualified from because of 
the impairment); Roush v. Weastec, Inc., 96 F.3d 840, 844 
(6th Cir. 1996) (finding a genuine issue of material fact as to 
whether bladder infection resulted in a substantial limitation 
of working with no reference to testimony about job market); 
Pritchard v. Southern Co. Svcs., 92 F.3d 1130, 1134 (11th Cir. 
1996) (finding sufficient evidence for the case to go to the jury 
where an engineer suffered symptoms of "marked fatigue, 
lack of energy, lack of interest, poor concentration, memory 
problems, suicidal thoughts, depressed affect, and irritability" 
that limited her ability to work in nuclear engineering, even 
though she was able to work as a non-nuclear engineer).

 It is notable that most of the reported district court 
decisions in the foregoing cases also made no mention of 
quantitative vocational evidence. See Gilday v. Mecosta 
County, 920 F. Supp. 792 (W.D. Mich. 1996); Baert v. Euclid 
Beverage, Ltd., 954 F. Supp. 170 (N.D. Ill. 1997); Cehrs v. 
Northeast Ohio Alzheimer Research Ctr., 959 F. Supp. 441 
(N.D. Ohio 1997). Indeed, among the foregoing cases, the 
only reported district court decision that did refer to quanti-
tative vocational evidence considered the evidence to disfavor 

the plaintiff. See Pritchard v. Southern Co. Svcs., 1995 WL 
338662, at *8-9 (N.D. Ala. Mar. 31, 1995) (finding that plain-
tiff did not allege sufficient evidence to support her disability 
claim). Nonetheless, following review, the decision of the 
court of appeals never even mentions the quantitative evi-
dence in reversing the district court's holding that the plain-
tiff had not alleged sufficient evidence to reach a jury. See 
Pritchard, 92 F.3d at 1134.

 Research indicates that most courts that have considered 
facts similar to those before this court have concluded that 
there was sufficient evidence for resolution of the issue by a 
jury, even where there was no quantitative evidence detailing 
the relevant job market. In the instant case, Mr. Duncan 
adduced competent evidence that he was foreclosed from 
medium and heavy lifting jobs, that he had worked in jobs 
requiring heavy lifting in the past, that he never graduated 
from high school, and that he did not have computer training, 
clerical experience, or office skills. Given this testimony, 
there was sufficient evidence for the jury to conclude that Mr. 
Duncan was foreclosed from a class of jobs "utilizing similar 
training, knowledge, skills or abilities," 29 C.F.R. 
s 1630.2(j)(3)(ii)(B), to the job at WMATA, for which he was 
otherwise qualified. See Wellington v. Lyon County Sch. 
Dist., 187 F.3d 1150, 1155 (9th Cir. 1999) (question of fact as 
to whether plaintiff is disabled exists where plaintiff had a 
high school degree, his work experience was limited to manu-
facturing, construction, heavy maintenance and plumbing, and 
no evidence was presented to suggest that jobs were available 
for which a person with plaintiff's skills, training, and abilities 
was qualified); Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 11-
12 (1st Cir. 1999) (finding sufficient evidence for a jury to find 
disability because the "inability to lift heavy objects and 
perform repetitive manual tasks can translate across a broad 
spectrum of physically demanding jobs," where plaintiff testi-
fied as to his limited job experience, education, and skills, and 
physician testified that plaintiff was precluded from a "lot" of 
jobs); Cochrum v. Old Ben Coal Co., 102 F.3d 908, 911 (7th 
Cir. 1996) (finding a genuine dispute of material fact as to 
whether plaintiff who worked in coal mine was substantially 

limited in working where plaintiff provided evidence that he 
could perform "no overhead work, heavy lifting, or pulling 
and pushing out from his body," because these restrictions 
"might apply to a broad range of jobs, and are more than job 
specific").

 In short, the weight of the case law from our sister circuits 
indicates that the existence of Mr. Duncan's disability should 
be evaluated based upon his individual characteristics, that he 
must show that he is disqualified from more than one particu-
lar job, and that relevant proof to determine whether he is 
disabled may include his education, work history, and evi-
dence of the job market. Other courts have been more likely 
to focus on the inadequacy of quantitative vocational evidence 
where the defendant has made a showing regarding the 
plaintiff's eligibility for employment. The defendant made no 
such showing in this case. Mr. Duncan offered more than 
enough to have his case heard and decided by a jury. And 
this court acts beyond its authority in taking the case from 
the jury.

D. Relevant Supreme Court Case Law

 The Supreme Court's recent pronouncements on the ADA 
do not give cause for this court to second-guess the jury in 
this case. In Murphy v. United Parcel Service, Inc., 119 
S. Ct. 2133 (1999), the Court reviewed a grant of summary 
judgment against an employee who was dismissed from his 
job as a UPS mechanic because of his high blood pressure. 
The employee argued in part that UPS regarded him as 
disabled because of his high blood pressure, alleging that the 
company regarded hypertension as substantially limiting him 
in the major life activity of working when, in fact, his hyper-
tension did not limit his ability to work. See id. at 2137. The 
employee was fired from his job because Department of 
Transportation regulations require that drivers of commercial 
motor vehicles not have hypertension. See id. at 2136. The 
Court found that, at most, the employee was regarded as 
unable to perform only one particular job, which is insuffi-
cient to show that he is regarded as substantially limited in 
the major life activity of working. See id. at 2138-39. The 
Court noted that the employee "put forward no evidence that 

he is regarded as unable to perform any mechanic job that 
does not call for driving a commercial motor vehicle and thus 
does not require DOT certification." Id. at 2139. It was 
undisputed, according to the Court, that in fact petitioner was 
"generally employable as a mechanic." Id. This lack of 
evidence put forward by petitioner combined with the uncon-
troverted evidence put forth by respondent that he could 
"perform jobs such as diesel mechanic, automotive mechanic, 
gas-engine repairer, and gas-welding equipment mechanic" 
convinced the Court that petitioner was not regarded as 
substantially impaired in the major life activity of working. 
Id. The Court's decision nowhere suggests that an ADA 
plaintiff must present quantitative evidence within the rigid 
formula devised by the majority here in order to demonstrate 
a substantial limitation in the major life activity.

 In Sutton, two myopic sisters were rejected from a pilot 
position because they did not meet United's minimum vision 
requirement. Their suit was dismissed for failure to state a 
claim upon which relief could be granted. See Sutton, 119 
S. Ct. at 2144. The petitioners alleged, inter alia, that 
United mistakenly regarded their physical impairments as 
substantially limiting them in the major life activity of work-
ing. See id. at 2150. The Court rejected this argument, 
again finding that petitioners had only alleged preclusion 
from one job, that of global airline pilot. See id. at 2151. 
According to the Court,

 [t]o be substantially limited in the major life activity of 
 working, then, one must be precluded from more than 
 one type of job, a specialized job, or a particular job of 
 choice. If jobs utilizing an individual's skills (but per-
 haps not his or her unique talents) are available, one is 
 not precluded from a substantial class of jobs. Similarly, 
 if a host of different types of jobs are available, one is not 
 precluded from a broad range of jobs.
 
Id. After noting that petitioners had only alleged that Unit-
ed regarded them as being ineligible for one particular job, 
the Court observed that "there are a number of other posi-
tions utilizing petitioners' skills, such as regional pilot and 

pilot instructor to name a few, that are available to them." 
Id. In Sutton, then, as opposed to the instant case, the 
plaintiffs could only allege exclusion from one particular job, 
which has long been insufficient to support a claim of disabili-
ty under the ADA.

 The majority attempts to evade the weight of authority 
from our sister circuits by drawing a line between pre-Sutton 
and post-Sutton cases. See Maj. Op. at 7 n.3. This attempt-
ed distinction is unconvincing absent some explanation as to 
why quantitative evidence regarding the available job market 
would be more relevant in a post-Sutton inquiry. The majori-
ty cites Sutton, 119 S. Ct. at 2151, to say that there are 
several factors courts "should consider" in assessing claims 
under the ADA, as if to suggest that a plaintiff must produce 
quantitative evidence detailing the relevant job market. See 
Maj. Op. at 6. This is not what Sutton says. Rather, in the 
section of the Sutton opinion cited by the majority, the 
Supreme Court merely notes that

 [t]he EEOC further identifies several factors that courts 
 should consider when determining whether an individual 
 is substantially limited in the major life activity of work-
 ing, including the geographical area to which the individ-
 ual has reasonable access, and "the number and types of 
 jobs utilizing similar training, knowledge, skills or abili-
 ties, within the geographical area, from which the indi-
 vidual is also disqualified." ss 1630.2(j)(3)(ii)(A), (B).
 
Sutton, 119 S. Ct. at 2151. Nothing in the EEOC regula-
tions, however, says that a plaintiff must in every case proffer 
quantitative evidence detailing the relevant job market. In-
deed, the relevant regulations both pre-Sutton and post-
Sutton suggest that courts may look to the available job 
market as one among several relevant factors in evaluating 
whether or not an individual is disabled. Sutton does nothing 
to change this.

 The majority's treatment of post-Sutton cases is also un-
convincing. See Maj. Op. 7 n.3. The majority attempts to 
diminish the decision in Wellington by citing a later decision 
from the Ninth Circuit, Broussard v. University of Califor-

nia, at Berkeley, 192 F.3d 1252 (9th Cir. 1999). The court in 
Broussard, however, found the expert's vocational report to 
be unreliable for two reasons ignored by the majority: the 
expert assumed, based on no documented evidence, that the 
plaintiff had a lifting restriction; and the expert incorrectly 
assumed that the plaintiff could only type for 15 minute 
intervals when testing had established she could type for 50 
minute intervals. See Broussard, 192 F.3d at 1258. Obvious-
ly, in such circumstances, an expert's testimony should be 
rejected as unreliable. More importantly, Broussard cites 
Bolton v. Scrivner approvingly, indicating the relevance of 
three separate types of evidence for the purposes of establish-
ing a disability: a plaintiff's vocational training, the geograph-
ical area to which he has access, or the number and types of 
jobs from which a plaintiff is disqualified. See Broussard, 
192 F.3d at 1258 (citing Bolton, 36 F.3d at 944).

 Significantly, Broussard makes it clear that a plaintiff's 
burden under the ADA is nothing like the test enunciated by 
the majority in this case. Rather, as the Ninth Circuit notes:

 To defeat the University's motion for summary judg-
 ment, Broussard needed to "identify what requirements 
 posed by the class of [animal care] jobs ... were proble-
 matic in light of the limitations that [CTS] imposed on 
 her. This is not an onerous requirement, but it does 
 require at least some evidence from which one might 
 infer that [plaintiff] faced 'significant restrictions' in her 
 ability to meet the requirements of other jobs." David-
 son v. Midelfort Clinic, Ltd., 133 F.3d 499, 507 (7th 
 Cir.1998). Broussard has failed to meet this require-
 ment.
 
Broussard, 192 F.3d at 1259. The court's references to "not 
an onerous requirement," "at least some evidence," and "one 
might infer" are a far cry from what the majority seeks here.

 Finally, and most tellingly, Broussard cites Sutton merely 
to say that the plaintiff's "inability to perform the specialized 
job of animal technician for the transgenic mice does not 
constitute a substantial limitation." Id. The court drew 
nothing more from Sutton.

 As one of our sister circuits has observed, in the context of 
proving a substantial limitation of the major life activity of 
working, Sutton and Murphy principally stand for the propo-
sition that an ADA plaintiff must "do more than allege that he 
is regarded as having an impairment which prevents him 
from working at a particular job." Shipley v. City of Univer-
sity City, 195 F.3d 1020, 1023 (8th Cir. 1999). This is not an 
earth-shaking notion, nor is it one that shatters the founda-
tion of the ADA. However, that a plaintiff is not "disabled" 
merely because he or she cannot perform a preferred job is a 
far cry from saying that, in order to prevail under the ADA, a 
plaintiff must in every case proffer expert testimony from a 
vocational specialist and statistical evidence regarding the 
numbers of jobs from which he was disqualified. In adopting 
this rule, the majority essentially holds that, in order to 
prevail under the statute, ADA plaintiffs must prove, with 
quantitative certainty, that almost all jobs are outside their 
reach. The statute does not require this, nor do the opinions 
from the Supreme Court. This rigid formulation simply 
rewrites the statute--something we have no authority to do--
and virtually ensures that very few plaintiffs will ever prevail 
under the ADA in this circuit.

 II. Conclusion 

 The jury's verdict in this case should stand. Under the 
very narrow standard of review that controls this court in this 
case, there is no basis upon which to take the case from the 
jury. The judgment of the District Court should be affirmed.