**Jocelyn BROUSSARD, Plaintiff– Appellant,**

v.

**UNIVERSITY OF CALIFORNIA, AT BERKELEY, Defendant– Appellee,**

**Office of Laboratory Animal Care, Defendant–Appellee.**

No. 97–17389.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1999.

Filed Sept. 20, 1999.

*Odedo,* 154 F.3d at 940 (quoting Advisory Comm. Notes to Fed.R.Crim.P. 11(h), 1983

Amendment).

Todd M. Schneider, Schneider & McCormac, San Francisco, California, for the plaintiff-appellant.

Kenneth L. Kann, Pahl & Gosselin, San Francisco, California, for the defendant-appellee.

Laurence Paradis and Sid Wolinsky, Disability Rights Advocates, Oakland, California, for the amicus curiae.

Before: CHOY and TASHIMA, Circuit Judges, and RESTANI,* Judge, United States Court of International Trade.

RESTANI, Judge:

Appellant Jocelyn Broussard ("Broussard") appeals the judgment of the United States District Court for the Northern District of California granting the University of California at Berkeley ("the University") summary judgment dismissing Broussard's claim against the University under the Americans with Disabilities Act ("ADA"). Broussard claims that the district court erred in determining that she was not disabled within the meaning of the ADA, and that the district court erred in deciding that there were no genuine issues of material fact regarding whether she could perform the essential functions of her job, with or without reasonable accommodation. Amicus curiae, Disability Rights Advocates, filed a brief in support of Broussard's claim. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1994) and we affirm the district court's grant of summary judgment in favor of appellee.

## I. BACKGROUND

Jocelyn Broussard was an animal technician in the Office of Laboratory Animal Care ("OLAC"), which is responsible for the daily care of research animals at the Berkeley campus. When Broussard began working at OLAC in 1986, she took care of a variety of animals, and in 1991, she began working with transgenic mice.

Transgenic mice are mice that are genetically altered to have various immune deficiencies, and must be cared for according to a rigid protocol in order to ensure their health. All the care of the transgenic mice must be carried out under a "biohood," an air filtration system which prevents germs from entering into contact with the mice. The animal technician caring for these mice must work at a rapid pace to minimize the time the mice spend under the biohood. Unlike other animals at OLAC, the transgenic mice must be given water manually, because there is no automatic watering system under the biohood.

In September of 1992, Broussard began experiencing pain in her right wrist, and attributed this to the constant stoppering and unstoppering of water bottles. Broussard was diagnosed with carpal tunnel syndrome ("CTS"), and her doctor advised her to wear splints on her wrists to alleviate the pain, and to limit the time she spent stoppering and unstoppering water bottles to one-hour intervals. Broussard claims OLAC allowed her to work with animals other than the transgenic mice in 1992, and that she spent extra time working in the washroom and on the computer.

From December 1992 to February 1993, Broussard was unable to work because of a non-work related disability. The pain in her wrist continued in 1993. Her physician found that Broussard needed temporary restrictions which affected her ability to lift and reach, and OLAC temporarily accommodated these restrictions.

In March 1993, Broussard's hand specialist, Dr. J. Hsieh, further limited her work, requiring that she spend no more than fifty percent of her day working with the cages and the water bottles. OLAC had to assign half of her workload with the transgenic mice to another technician. Broussard ceased working in August 1993, due to the pain in her wrist. She underwent surgery on her wrist in December 1993. She was on temporary disability status until June 29, 1994, when her treating physician, Dr. Massem, released her to work with a variety of restrictions. Broussard claims that OLAC would not accommodate these restrictions.

Broussard underwent a work tolerance evaluation in order to determine her abili-

---

* The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

ties in light of her CTS. Timothy Brent, a certified rehabilitation counselor, found that Broussard could work safely in thirty to forty-five minute intervals of "Sedentary to Light manual labor activities." He concluded, however, that she had "moderate to poor potential to carry out her job duties as Animal Technician," because she would need to clean and change animal cages for a sustained two-hour period and her "current ability indicates a maximum of 30 to 45 minutes of this particular activity."

Broussard requested that she be transferred out of the transgenic mice suite and that she be allowed to work with animals on the automatic watering system. The University said there were no vacancies in OLAC in June 1994, and that positions which opened in early March 1995 were positions for which Broussard lacked the necessary qualifications. OLAC's chief administrative officer and a University vocational rehabilitation specialist concluded that because all the animal technician positions required repetitive motion, Broussard was unable to perform this work.

On December 7, 1994, Al Perez, a vocational rehabilitation counselor at the University, informed Broussard that she was "medically separated" (i.e. that her employment had been terminated). Broussard's appeal of this decision was denied.

Broussard applied for Social Security benefits and long-term disability benefits under the University of California Retirement Plan ("UCRP"). Broussard was denied the Social Security benefits, but was awarded $479 per month under the UCRP. She continues to receive this benefit.

Broussard filed a complaint before the Equal Employment Opportunity Commission ("EEOC") in 1995, and received a right to sue letter in February 1996. Broussard filed a complaint against the University on May 20, 1996, claiming that

the University violated the ADA when she was medically separated.

The University moved for summary judgment in May 1997, and this motion was initially denied. The University filed a motion for reconsideration, and the district court granted this motion on November 21, 1997, after a request for rebriefing on specific issues. The court found that Broussard had failed to raise a genuine issue of material fact as to whether she was disabled under the terms of the ADA, and was not a qualified individual under the Act. The court also found that Broussard was judicially estopped from claiming she was disabled under the terms of the ADA because of the representations she had made regarding her disability in her application for benefits under Social Security and the UCRP. Plaintiff appeals on both grounds.[1]

## II.   STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 996 (9th Cir.1987). The question of whether the district court properly applied the judicial estoppel doctrine to the facts presented in this case is reviewed for abuse of discretion. *See Johnson v. State of Oregon*, 141 F.3d 1361, 1364 (9th Cir.1998) (citation omitted).

## III.   DISCUSSION

Congress enacted the ADA in 1990 in an effort to eliminate discrimination against individuals with disabilities. *See* 42 U.S.C. § 12101(b) (1994) (stating general purpose of ADA). The ADA prohibits covered employers from discharging otherwise qualified employees solely because they have a disability. *See* 42 U.S.C. § 12112(a). To prevail, the plaintiff in an employment termination case must show "(1) that [she] is a disabled person within

---

1. Broussard attempts to raise for the first time on appeal the issue of whether or not the University engaged in the interactive process, regarding reasonable accommodation, as required of employers under the ADA. We do not reach this issue.

the meaning of the ADA; (2) that [she] is qualified ... with or without reasonable accommodation ... to perform the essential functions of the job; and (3) that the employer terminated [her] because of [her] disability." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996) (citation and footnote omitted).

## Disability within the meaning of the ADA

The ADA defines an individual with a disability as someone who has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). One must have an actual disability to fall within this definition. *Sutton v. United Air Lines, Inc.*, —— U.S. ——, ——, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999). Pursuant to EEOC regulations, "working" constitutes a major life activity. 29 C.F.R. § 1630.2(i) (1999).[2] The statute does not define the term "substantially limited," but the regulations state that an individual is "substantially limited" from working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

The regulations further state that additional factors may be considered in order to determine whether or not an individual is substantially limited in the major life activity of working. *See* 29 C.F.R. § 1630.2(j)(3)(ii). These considerations are:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs) and/or;

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.*

The interpretive guidance applicable to these regulations, provided by the EEOC, further emphasizes that an individual is not substantially limited in working just because she is unable to perform a particular job, or unable to perform a specialized job. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j). The individual need not, however, be totally unable to work in order to be considered substantially limited. *Id.* The interpretative guidance further states that the factors listed in 29 C.F.R. § 1630.2(j)(3)(ii) "are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g. 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." *Id.*

In *Sutton*, the Court addressed the meaning of "substantially limited" in the context of determining whether the petitioners were "regarded as disabled" pursu-

---

2. In its recent decision regarding whether disability under the ADA is to be determined with or without reference to corrective measures, the Supreme Court declined to consider what deference is due to these EEOC regu-

lations. *Sutton*, —— U.S. at ——, 119 S.Ct. at 2145. As in *Sutton*, the parties to this action accept these regulations as valid, so we need not decide what level of deference is due.

ant to 42 U.S.C. § 12102(2)(C).[3] —— U.S. at ——, 119 S.Ct. at 2151. When the major life activity at issue is working, the Court held that "the statutory phrase 'substantially limits,' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.* The Court relied on the EEOC definition of the term and stated that to be substantially limited from working, "one must be precluded from more than one type of job, a specialized job, or a particular job of choice.... [I]f a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Id.; see also Murphy v. United Parcel Serv., Inc.,* —— U.S. ——, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999) ("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job.").

The Supreme Court also emphasized that the definition of disability in the ADA requires an "individualized inquiry" because the statute "requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' " *Sutton,* —— U.S. at ——, 119 S.Ct. at 2147 (quoting 42 U.S.C. § 12102(2)).[4]

■ On the first motion for summary judgment, the district court found that there was a genuine issue of material fact regarding whether Broussard had shown she was substantially limited in the major life activity of working. The court based this conclusion on the declaration of Thomas Church, a vocational rehabilitation specialist who evaluated Broussard's job prospects in the San Francisco Bay area. Church determined that Broussard was limited to working in the sedentary to light category of jobs, and that she faced restrictions even within this category. Upon reconsideration of the defendant's summary judgment motion, the district court re-evaluated the merits of the Church declaration and concluded that Broussard had failed to raise a genuine issue of material fact regarding whether she was substantially limited from performing a number of jobs.

Whether Broussard has raised a genuine issue of material fact that she is substantially limited in working depends upon an evaluation of the merits of the Church declaration. Church's report is the only evidence which might show that Broussard is barred from significant percentages of available employment in the San Francisco area because of her CTS. Church based his conclusions on the evaluations prepared in June of 1994 by both Brent, the rehabilitation counselor, and by Dr. Massem.

Church analyzed the jobs for which Broussard was qualified based on lifting restrictions, although neither Brent's report nor Dr. Massem's evaluation address a lifting restriction. Church concluded that Broussard could only perform work in the "Sedentary to Light" categories, which require exerting no more than twenty pounds. Including her reaching and handling restrictions, he stated she would be precluded from several occupations in the Sedentary and Light categories, which would be sixty percent of the remaining jobs nationwide. Applying these restrictions to jobs available in the San Francisco area, Church stated that Broussard's lifting restriction precluded her from forty percent of 3,283,800 positions.

---

**3.** Broussard does not claim that she was regarded as disabled. She claims only that she is disabled pursuant to part (A) of 42 U.S.C. § 12102(2).

**4.** *Amicus* emphasize that CTS can be severe enough to rise to the level of a disability under the ADA. There is no reason, however, to view CTS differently from any other impairment under the ADA. It will not rise to the level of a disability unless plaintiff shows that it results in a significant barrier to her employment. Moreover, the University does not argue that CTS cannot rise to the level of a disability under the ADA.

Church's analysis is flawed for at least two reasons. First, his calculations are based on lifting restrictions, but this restriction was not tested by Brent or Dr. Massem. Second, he stated that Broussard was limited to fifteen minute intervals on a keyboard. Brent's testing, however, found Broussard could perform for fifty minutes at a time on the keyboard. Moreover, Church's declaration draws the legal conclusion that Broussard is "substantially impaired in her ability to perform a class of jobs" by reciting the language of 29 C.F.R. § 1630.2(j)(3)(i) and concluding that Broussard is thus "disabled" as defined by the ADA.

■ Even though factual allegations in a motion for summary judgment must be viewed in the light most favorable to the non-moving party, summary judgment is mandated if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The district court correctly concluded that, in light of *Thompson v. Holy Family Hosp.,* 121 F.3d 537 (9th Cir.1997) (*per curiam*), Broussard failed to point to any credible evidence that she was substantially limited in the major life of activity of working, such that would defeat the University's motion for summary judgment.

In *Thompson,* the plaintiff failed to show that she was significantly restricted in her ability to perform nursing jobs or a broad range of other jobs for which she was qualified, and this failure led to a grant of summary judgment for the employer. 121 F.3d at 541. Thompson had suffered a work-related cervical injury which prevented her from lifting over twenty-five pounds on a continuous basis. *See id.* at 539. The hospital placed Thompson on a leave of absence when it became clear that her restriction was permanent, and that she could no longer provide total patient care. *See id.* We rejected Thompson's claim that this lifting restriction made her

substantially limited in the activities of working and lifting. *See id.*

Thompson could not point to evidence which showed that her restriction precluded her from engaging in an entire class of jobs. Thompson did not counter the findings of a vocational rehabilitation counselor that she was qualified for numerous positions as a registered nurse in the Spokane labor market with "evidence of a significant decline in her ability to obtain employment." *Id.* We held that "Thompson's conclusory allegations are insufficient to withstand the motion for summary judgment." *Id.* (discussing *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir.1997), and *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir. 1995)); *cf. Wellington v. Lyon County Sch. Dist.,* 187 F.3d 1150 (9th Cir.1999) (distinguishing *Thompson* and finding question of fact existed whether plaintiff with limited education and job opportunities was significantly restricted from class of jobs; undisputed that plaintiff permanently unable to perform former maintenance and heavy activities).

Church's declaration is akin to the statements presented in *Bolton v. Scrivner,* where the evidence did not address plaintiff's "vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which [plaintiff] would also be disqualified." 36 F.3d 939, 944 (10th Cir. 1994). Church's declaration likewise does not take Broussard's vocational abilities into account. Rather, Church based his conclusions on categories of jobs, i.e. "Sedentary" and "Light manual."

Broussard relies on *Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667 (7th Cir.1998), to support her argument that the Church declaration raises a genuine issue of material fact. In *Dalton,* the court found that an affidavit from a vocational rehabilitation counselor, coupled with the testimony of the plaintiffs, did raise a genuine issue of material fact regarding whether they were substantially

limited in their ability to work. *See id.* at 675–76. Initially, the lower court had struck the vocational counselor's affidavit because it was too general. The first affidavit had not compared the number of jobs plaintiffs could do before and after the onset of their disabilities. Moreover, it looked at the entire country instead of the region where plaintiffs would look for work, and the time periods for the statistics were unclear. *Id.* at 675. Although a supplemental affidavit filed in *Dalton* ultimately provided sufficient information to defeat the motion for summary judgment, the Church declaration suffers from the same flaws as the original affidavit. Church did not compare the jobs Broussard could do before and after the onset of her CTS, and there is no indication of what time periods he was analyzing.[5]

■ To defeat the University's motion for summary judgment, Broussard needed to "identify what requirements posed by the class of [animal care] jobs ... were problematic in light of the limitations that [CTS] imposed on her. This is not an onerous requirement, but it does require at least some evidence from which one might infer that [plaintiff] faced 'significant restrictions' in her ability to meet the requirements of other jobs." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 507 (7th Cir.1998). Broussard has failed to meet this requirement. The Church declaration is the type of conclusory allegation which this court found insufficient to withstand the motion for summary judgment in *Thompson.* Broussard's inability to perform the specialized job of animal technician for the transgenic mice does not constitute a substantial limitation. *See Sutton,* —— U.S. at ——, 119 S.Ct. at 2151; *see also* 29 C.F.R. § 1630.2(j)(3)(i).

## IV. CONCLUSION

We conclude that Broussard is not substantially limited in the major life of activity of working, and that she is, thus, not disabled under the terms of the ADA. Therefore, we need not consider the second question of whether Broussard was a qualified individual who could perform the essential functions of her job, with or without reasonable accommodation.

■ In light of our holding that Broussard is not disabled pursuant to the ADA, we need not decide whether the district court properly applied the doctrine of judicial estoppel. We also do not address Broussard's claim that the University failed to engage in the interactive process, as required by regulation under the ADA. *See* 29 C.F.R. § 1630.2(*o*)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual."). Any failure by the University to engage in an interactive process with Broussard is negated by the fact that she is not disabled under the terms of the ADA. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir.1997) (holding that "employer's lack of investigation into reasonable accommodation" and failure to engage in interactive process was "unimportant" where plaintiff could not show availability of reasonable accommodation under the ADA).

**AFFIRMED.**

---

**5.** Broussard's reliance on *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (3d Cir. 1998) is also unavailing. In denying summary judgment for the employer in *Mondzelewski,* the court found that the district court had failed to conduct an individualized assessment of how plaintiff's back condition substantially limited his ability to work. *See id.* at 785. The vocational expert in *Mondzelewski,* however, met the regulatory standard of showing that the plaintiff was substantially limited in either a class of jobs or a broad range of jobs in various classes. *Id.*