Lloyd M. VANDERPOOL, Plaintiff,

v.

SYSCO FOOD SERVICES OF PORT-
LAND, INC., a Delaware corpora-
tion, Defendant.

No. CV 99–1118–BR.

United States District Court,
D. Oregon.

April 16, 2001.

Rick Klingbeil, Jolles & Bernstein PC, Portland, OR, for Plaintiff.

Mary Merten James, Linda J. Kessel, Harrang Long Gary & Rudnick PC, Salem, OR, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This employment case comes before the Court on Defendant's Motion for Summary Judgment (# 34). For the following reasons, the Motion is **DENIED**.

### THE AMENDED COMPLAINT

Plaintiff worked as a beverage service technician and truck driver for Defendant from 1993 until November 1998. In June 1998, Plaintiff had hip replacement surgery. Plaintiff contends he told Defendant he would be able to return to light-duty, part-time work after he recovered from surgery. Defendant allegedly "insisted that plaintiff accept a job which was beyond his capabilities and which defendant knew to be beyond his capabilities at that time." Plaintiff asserts he told Defendant he could not perform that job and asked Defendant to provide him with a job consistent with his medical restrictions. Defendant allegedly refused to accommodate Plaintiff's disability and terminated his employment on November 4, 1998.

In his Amended Complaint, Plaintiff alleges Defendant's conduct violated the Americans with Disabilities Act (ADA) and Oregon statutes that prohibit discrimination against individuals with disabilities. Plaintiff seeks reinstatement to his former position; $300,000 in economic damages; $150,000 in noneconomic damages; $1,000,000 in punitive damages; and costs and attorneys' fees.

Defendant denies it failed to accommodate Plaintiff or otherwise discriminated against Plaintiff on the basis of his alleged disability. Defendant counterclaims for attorneys' fees and costs.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. Summary Judgment Standard**

Under Fed.R.Civ.P. 56:

Summary judgment should be granted if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. The underlying substantive law governing the claims determines whether or not it is material. Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party. There must be enough doubt for a "reasonable trier of fact" to find for

plaintiffs in order to defeat the summary judgment motion.

*Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000) (citations omitted).

## II. *Defendant Is Not Entitled to Summary Judgment on Plaintiff's ADA and State–Law Disability Claims*

### A. There Is Evidence in the Record from which a Factfinder Could Conclude Plaintiff Was Disabled

█ Defendant first argues there is no evidence in the record from which a factfinder could infer Plaintiff was disabled by his hip replacement at the time Defendant discharged him. The ADA does not forbid all discrimination on the basis of physical impairment. Rather, the Act prohibits employers only from discriminating against "qualified individual[s] with a disability." 42 U.S.C. § 12112(a). The term "disability" is defined in several ways.[1] For purposes of Defendant's summary judgment motion, the pertinent definition of disability is "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A).

Plaintiff contends he is disabled in the major life activity of working. Equal Employment Opportunity Commission (EEOC) regulations provide:

> [A]n individual is "substantially limited" from working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the

major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

*Broussard v. University of California,* 192 F.3d 1252, 1256 (9th Cir.1999).

Defendant argues Plaintiff has not proffered evidence from which a factfinder could conclude Plaintiff's hip replacement substantially limits his ability to work. It is undisputed that Plaintiff obtained his contractor's license and started his own heating and air conditioning business the month after Defendant discharged him. Defendant contends Plaintiff's operation of his contracting business is inconsistent with Plaintiff's claim of disability. Plaintiff testified at deposition, however, he has constant hip pain that sometimes prevents him from working on consecutive days and sometimes prevents him from putting in a full day's work. Plaintiff also allegedly turns down certain contracting jobs that require too much physical work or too much crawling.

Plaintiff's testimony regarding his hip pain and resulting limitations is not sufficient, by itself, to create a jury issue regarding whether those limitations substantially limit Plaintiff's ability to work. Plaintiff has supplemented his own testimony, however, with the Amended Affidavit of John Lipnicki, a certified rehabilitation consultant. Lipnicki reviewed Plaintiff's medical records; spoke to Plaintiff's physician concerning the limitations posed by Plaintiff's artificial hip; and determined Plaintiff should avoid stooping, squatting, climbing stairs, kneeling, crawling, climbing ladders, and lifting more than 50 pounds. Lipnicki also believes Plaintiff should have a job that al-

---

1. The ADA defines "disability" as follows:
   The term "disability" means, with respect to an individual—
   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

   (B) a record of such an impairment;  or
   (C) being regarded as having such an impairment.

   42  U.S.C. § 12102(2).

lows him to move about at will. Lipnicki concluded the limitations posed by Plaintiff's hip replacement preclude Plaintiff "for all practical purposes, from practically all of the jobs within the following 26 job categories:"

> Lodging, food services, personal services, cleaning, home care, child care, agriculture, food processing, landscaping, animal care, forestry, logging, millwork, machine maintenance, mechanics, repairers, auto services, metal trades, machining, packaging, construction trades, electrician, cabinetry, trucking, warehouse work, material handling.

Lipnicki also asserts Plaintiff's hip replacement precludes Plaintiff from performing most jobs in the following categories for which he has adequate training and skills: production, protective services, security, industrial, and labor. Finally, Lipnicki concluded Plaintiff cannot perform the majority of jobs within the following additional categories of jobs for which he would need some retraining or additional education: recreation, travel, health services, publishing, printing, quality control, welding, and transportation. A factfinder could infer from Lipnicki's Amended Affidavit that Plaintiff is significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills, and abilities. *See Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999) (evidence the plaintiff "may be precluded from working in any capacity involving construction, maintenance or even light plumbing" created a question of fact regarding whether the plaintiff was significantly restricted in his ability to work in a class of jobs given his training and skills).

Defendant contends Lipnicki's Amended Affidavit does not create a jury issue for several reasons. First, Defendant argues Lipnicki did not describe the percentage of jobs an "average person" could perform in the 26 job categories in which Plaintiff can perform virtually no jobs. The Court does not view this omission as a fatal defect. A rational factfinder could infer that people with average physical abilities must be able to perform many jobs within the 26 categories; otherwise, the jobs seldom would be performed. *Cf. United States v. Kojayan*, 8 F.3d 1315, 1321 (9th Cir.1993) (jurors may use their common sense to reach "a conclusion not explicitly spelled out by the evidence"). Evidence that Plaintiff is unable to perform any of the jobs, therefore, supports a conclusion that Plaintiff is "substantially limited" in his ability to work.

Defendant also argues Lipnicki's Amended Affidavit is inadequate because it "does not address the number of jobs available to Plaintiff in the local employment market" but "provides only descriptions of the various job categories used by the Oregon Employment Department to classify jobs." According to Defendant, jobs unavailable in the Portland area "cannot be considered in determining if Plaintiff is significantly limited in his ability to work as compared to the average person . . . ." Defendant's analysis is overly rigid. According to Lipnicki, the Oregon Employment Department divides jobs into 15 categories. Plaintiff allegedly cannot perform many of the jobs in those categories. A factfinder could infer from this evidence that Plaintiff is unable to perform either a class of jobs that exists in Oregon or a broad range of jobs in various classes available in this state.

Defendant also notes correctly that Lipnicki's Amended Affidavit "does not compare the number or types of jobs Plaintiff could perform before his hip replacement surgery with the number or types he could perform after his surgery." This omission is insignificant in light of the other evidence in the record. Lipnicki asserts

Plaintiff's hip replacement limited his ability to climb stairs, lift, stoop, squat, kneel, and crawl. It is undisputed that Plaintiff's former duties as a beverage service technician required Plaintiff to twist, stoop, bend, squat, crawl, and climb stairs. A factfinder could infer, therefore, that Plaintiff's hip replacement precluded him from performing certain types of jobs he previously was able to perform.

Defendant also contends Lipnicki's Amended Affidavit is defective because Lipnicki did not "address what requirements of the jobs from which Plaintiff supposedly is precluded are problematic in light of his particular limitations." The Court is not persuaded by this argument. The Amended Affidavit includes a detailed description of the activities in which Plaintiff should not engage. Lipnicki also lists the types of jobs Plaintiff cannot perform as a result of his limitations. Lipnicki's Amended Affidavit, although somewhat conclusory, is sufficient to defeat Defendant's Motion for Summary Judgment because it provides some evidence from which a factfinder could infer Plaintiff's hip replacement precludes him from performing the listed jobs.

Finally, Defendant contends Lipnicki's Amended Affidavit is inadequate because it does not take into account Plaintiff's ability to play handball, to run several miles, and to operate a contracting business. It is not this Court's role, however, to weigh the evidence or to determine which witnesses are more credible. The factfinder must decide whether to credit Plaintiff's claim of disability in light of evidence Plaintiff is able to engage in strenuous physical activity and to run a business.

Defendant's attacks on Lipnicki's Amended Affidavit have a common theme: The affidavit is too general and conclusory to overcome a summary judgment motion. Defendant relies heavily on *Broussard v.*

*University of California,* 192 F.3d 1252 (9th Cir.1999), an ADA case in which the Ninth Circuit affirmed summary judgment for the defendant employer. The *Broussard* plaintiff was an animal technician whose employer fired her after she was diagnosed with carpal tunnel syndrome. The plaintiff submitted the declaration of a vocational rehabilitation specialist to support her allegation that she was disabled. The specialist "determined that Broussard was limited to working in the sedentary to light category of jobs, and that she faced restrictions even within this category." *Id.* at 1257. The Ninth Circuit held the specialist's declaration did not create a genuine issue regarding whether the plaintiff was disabled, in part because it was overly general and conclusory. *See id.* at 1259.

Defendant contends Lipnicki's Amended Affidavit suffers from the same defects as the specialist's declaration in *Broussard.* The Court disagrees. First, the *Broussard* declaration was based on lifting and typing restrictions that were not identified by the plaintiff's physician or rehabilitation counselor. *See id.* at 1257–58. In this case, the limitations Lipnicki identifies allegedly are supported by his conversations with Plaintiff's physician. Second, the rehabilitation specialist in *Broussard* did not list particular jobs the plaintiff was unable to perform; instead, he merely stated the plaintiff could perform only light or sedentary work. *Id.* at 1257–58. Here, Lipnicki specifically identified the jobs Plaintiff cannot perform because of his hip replacement.

To overcome Defendant's Motion for Summary Judgment on the issue of disability, Plaintiff was required only to proffer "some evidence from which one might infer that [Plaintiff] faced 'significant restrictions' in [his] ability to meet the requirements of other jobs." *Id.* at 1259

(quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 507 (7th Cir.1998)).[2] Plaintiff has met this requirement, which is "not ... onerous,"[3] by offering his own testimony and Lipnicki's Amended Affidavit. *See generally Wellington*, 187 F.3d at 1155.

### B. There is Evidence from which a Factfinder Could Conclude Plaintiff Is a "Qualified Individual"

Defendant contends Plaintiff is not a "qualified individual with a disability" if Lipnicki's Amended Affidavit is accurate because the Affidavit establishes Plaintiff cannot perform the essential functions either of the job he held before his surgery or of the light-duty job Defendant later offered him. Plaintiff did not have an opportunity to respond to this argument because Defendant raised it for the first time in its Reply to Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment.

The ADA prohibits discrimination against qualified individuals with disabilities.

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires....

42 U.S.C. § 12111(8). Defendant is entitled to summary judgment if the evidence on which Plaintiff relies establishes conclusively that Plaintiff could not perform the essential functions of his job with or without reasonable accommodation.

Defendant's argument fails because there is evidence in the record from which a factfinder could infer Defendant did not work with Plaintiff to determine whether Plaintiff's disability could be accommodated. The ADA requires the employer and employee to engage in an interactive process to make that determination. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 (9th Cir.2000). The employer's mandatory duty to participate in the interactive process "is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation." *Id.* at 1114. The duty also may be triggered if the employer recognizes the need for accommodation in the absence of a request from the employee. *See id.* at 1112. Employers who fail to engage in the interactive process in good faith "face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* at 1116.

Although an ADA plaintiff ultimately can prevail on a failure-to-accommodate claim only if he or she proves a reasonable accommodation would have been possible, the plaintiff does not have to provide evidence that the accommodation was feasible to overcome an employer's motion for summary judgment. The purpose of the interactive process is to identi-

---

**2.** Defendant argues Plaintiff has a greater burden in this case. In the Ninth Circuit, the nonmoving party "must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial" if the factual context makes the nonmoving party's claim implausible. *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir.1994). Defendant contends Plaintiff's allegation of disability is implausible in light of his physical ability to

run, to play handball, and to operate his own business. The Court disagrees. Plaintiff's allegations are not so wholly implausible as to require him to proffer more evidence than normally is necessary to overcome a summary judgment motion. A factfinder rather than the Court must decide the credibility of Plaintiff's allegations.

**3.** *Broussard*, 192 F.3d at 1259.

fy and to develop a reasonable accommodation. If the interactive process did not occur, it is difficult to tell whether accommodation would have been possible:

> The interactive process is the key mechanism for facilitating the integration of disabled employees into the workplace. Employers who reject this core process must face liability when a reasonable accommodation would have been possible. Without the interactive process, many employees will be unable to identify effective reasonable accommodations. Without the possibility of liability for failure to engage in the interactive process, employers would have less incentive to engage in a cooperative dialogue and to explore fully the existence and feasibility of reasonable accommodations. The result would be less accommodation and more litigation, as lawsuits become the only alternative for disabled employees seeking accommodation. This is a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that the ADA intended. **Therefore, summary judgment is available only where there is no genuine dispute that the employer has engaged in the interactive process in good faith.**

> We hold that employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. **We further hold that an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer**

> **engaged in good faith in the interactive process.**

*Barnett,* 228 F.3d at 1116 (emphasis added; footnote omitted).[4]

In this case, it is undisputed that Plaintiff visited Defendant's facility approximately every other week while he recovered from his June 1998 surgery. During a September 25, 1998, visit, Plaintiff's supervisor asked when Plaintiff was going to return to work. Plaintiff said he would visit his doctor in a few days and would ask about returning to work part-time. Plaintiff's supervisor stated Plaintiff "absolutely" could not work part-time because Defendant had designated Plaintiff to replace another full-time employee. Later that day, Plaintiff also told Erica Eliason, who worked in Defendant's human resources department, "he had discussed coming back on a part time basis" and was going to see his doctor in a few days. On September 28, Plaintiff's doctor extended his return-to-work date to November 16, 1998.

On October 22, 1998, Eliason gave Plaintiff a letter in which she described a light-duty position. In the letter, Eliason stated Plaintiff should report to work with a signed release for light-duty work by November 2, 1998. Eliason's letter included a footnote that stated the position was "subject to reasonable accommodation for qualified individuals with disabilities." For purposes of this Motion, however, Defendant does not dispute that Eliason orally told Plaintiff:

> I have talked to my attorneys, my supervisors. I am well within my rights to do this. This is the only position I have for you. There are no concessions. I

---

4. Defendant cites several cases from other jurisdictions in which courts provide a somewhat different analysis of the employer's duty to accommodate an employee's disability. Those cases are not applicable in light of the *Barnett* court's detailed discussion of the employer's duty to participate in an interactive process designed to develop a reasonable accommodation.

would like to have your answer or have your doctor sign a release and come back to work on or before this date [November 2, 1998].

Evidence supports Plaintiff's contention that he told Eliason he would not accept the light-duty position, which required stooping, squatting, kneeling, climbing ladders, and climbing stairs. There also is evidence in the record that Plaintiff repeated his statement that he might want to return to work part-time.

A rational factfinder could infer from this evidence that Defendant did not attempt to engage Plaintiff in an interactive process designed to determine whether Plaintiff's disability could be accommodated. To the contrary, a factfinder could conclude Defendant offered Plaintiff only one full-time position with duties inconsistent with Plaintiff's medical restrictions and that Defendant never considered whether it could accommodate Plaintiff's suggestion of part-time work. In other words, the evidence creates a genuine dispute regarding whether Defendant engaged in the interactive process in good faith. The Court cannot rule out the possibility that Defendant and Plaintiff might have been able to reach a mutually acceptable accommodation if they had engaged in the interactive process. Such an accommodation might have been possible even if it is true, as Lipnicki asserts, that Plaintiff could perform virtually no jobs in the areas of machine maintenance, mechanics, and repairs. A factfinder, not the Court, must determine whether Lipnicki's amended affidavit is consistent with Plaintiff's assertion he could have returned to work on a part-time basis.

**C. Defendant Is Not Entitled to Summary Judgment on the Ground Plaintiff Did Not Engage in the Interactive Process**

Defendant contends Plaintiff refused to cooperate in the interactive process when he "refus[ed] to consider a full-time position with modified duties." As explained above, however, there is evidence from which a factfinder could infer Defendant stymied the interactive process by telling Plaintiff he absolutely could not work full time and by stating only one job was available to Plaintiff with "no concessions." That evidence precludes Defendant from prevailing on the issue of accommodation at the summary judgment stage even if Plaintiff did not attempt in good faith to identify a reasonable accommodation of his disability.

**D. There is Evidence from which a Factfinder Could Conclude Plaintiff Was Terminated in Violation of the ADA**

Finally, Defendant argues that "even if Plaintiff could prove a prima facie case of disability discrimination, his claim still fails because he was not terminated because of his disability." According to Defendant, it must prevail because "the only evidence is that Plaintiff was terminated because he refused to report to work in the light duty position, failed to call-in, and failed to provide information from his doctor regarding his ability to perform the light duty position." Defendant is mistaken.

> Under the ADA, the term "discriminate" is defined as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

*Humphrey v. Memorial Hosps. Ass'n,* 239 F.3d 1128, 1133 (9th Cir.2001). Thus, the concept of discrimination in the ADA encompasses an employer's failure to reason-

ably accommodate the disability of a qualified individual. As explained above, a factfinder could infer Defendant did not engage in an interactive process to determine whether Plaintiff's alleged disability reasonably could be accommodated. Consequently, Defendant is not entitled to summary judgment on the ground it did not discriminate against Plaintiff on the basis of his disability.

For the reasons discussed above, the Court denies Defendant's Motion for Summary Judgment against Plaintiff's ADA claim. The parties do not contend a different analysis applies to Plaintiff's Oregon state disability claim; accordingly, Defendant's Motion for Summary Judgment on the state-law disability claim also is denied.

## CONCLUSION

Defendant's Motion for Summary Judgment (# 18) is **DENIED.**

IT IS SO ORDERED.