**Robert Anthony KILLIAN and Fabiola Killian, Plaintiffs,**

v.

**PACIFIC EDUCATIONAL SERVICES COMPANY, a Nevada corporation, dba Hawaii College of Pharmacy, David Champion Monroe, fka David Yacas, Denise A. Criswell, aka Deedee Criswell, aka DeDe Criswell, aka Denise Criswell Nakajima, Defendants.**

**Civil No. 05–00468 JMS/KSC.**

United States District Court, D. Hawai'i.

Oct. 23, 2006.

See, also, 2007 WL 1303023.

**1134**

Michael F. O'Connor, Oliver Lau Lawhn Ogawa & Nakamura, Honolulu, HI, for Plaintiffs.

J. Thomas Weber, Ayabe Chong Nismimoto Sia & Nakamura, Honolulu, HI, for Defendants.

Girard D. Lau, Office of the Attorney General, Honolulu, HI, for Amicus Curiae.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

SEABRIGHT, District Judge.

## I. *INTRODUCTION*

Plaintiffs Robert and Fabiola Killian have moved the court for partial summary judgment as to their claims that the Defendants engaged in unfair and deceptive trade practices in violation of Hawaii Revised Statutes ("HRS") chapters 446E and 480 and that the Defendants were negligent. The Defendants—Pacific Educational Services Company ("PES"), David Champion Monroe, and Denise A. Criswell—have filed a counter motion for partial summary judgment as to the constitutionality of HRS § 446E–5 and a motion for partial summary judgment as to constitutionality of HRS § 446E–3; the Defendants also argue that a genuine issue of material fact exists as to the negligence claim. Based on the following, the court GRANTS IN PART and DENIES IN PART the Plaintiffs' motion for partial summary judgment: the court GRANTS summary judgment as to the Plaintiffs' claims against PES, and the court DENIES summary judgment as to the Plaintiffs' claims against Criswell and Monroe. The court DENIES the Defendants' Counter Motion for Partial Summary Judgment and the Defendants' Motion for Partial Summary Judgment.

## II. *BACKGROUND*

Defendants Criswell and Monroe established the Hawaii College of Pharmacy ("HICP") as the first college of pharmacy in Hawaii. At no time was HICP ever accredited by the American Council on Pharmaceutical Education ("ACPE"), the accrediting agency for professional pharmacy programs recognized by the Secretary of Education, United States Department of Education.[1] HICP is owned and operated by PES (Pacific Educational Services Company); Criswell is PES's Chief Executive Officer and Monroe is the Chief

---

1. *See* Plaintiffs' Second Amended Complaint ("Complaint") at 1, 3; Defendants' Answer to First Amended Complaint ("Answer") at 2, 3;

Defendants' Concise Statement of Facts in Support of Counter Motion for Partial Summary Judgment ("Defendants' Concise") at 3.

Operating Officer and majority shareholder.[2]

Plaintiff Robert Killian attended HICP during the 2004–2005 school year. He paid over $28,000 in tuition and fees, and he and Plaintiff Fabiola Killian further allege that they spent a considerable sum of money moving from California to Hawaii so that Robert could attend HICP. The Plaintiffs further allege that HICP, Criswell, and Monroe engaged in unfair and deceptive trade practices in advertising and promoting HICP. They contend that HICP's promotional materials and website gave prospective students the impression that HICP was on the verge of receiving accreditation, when in fact HICP was nowhere close to becoming accredited; that HICP lied about being affiliated with the University of Southern Nevada (specifically, that HICP falsely stated it would be sharing faculty with the University of Southern Nevada and that a University of Southern Nevada professor was on the HICP Board of Trustees); that HICP lied about the class size (accepting 240 students when it had promised a class size of 120[3]); and that Criswell and Monroe lied about their credentials (by stating that they were doctors when in fact neither one had completed a Ph.D. or M.D. program). *See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiffs' Memo"), Exs. A, B, C, D, F, G; Declaration of Robert Killian. As to HICP's accreditation status, the Plaintiffs allege that HICP violated HRS chapter 446E (entitled "Unaccredited Degree Granting Institutions") in failing to make statutorily mandated disclosures regarding its unaccredited status and in stating that it had applied for accreditation.

The Defendants' briefs make no attempt to refute the Plaintiffs' allegations of unscrupulous and deceitful behavior. Instead, the Defendants argue that HRS chapter 446E is an unconstitutional restriction on their speech. They allege that they applied for accreditation with ACPE and that the information in their promotional materials was truthful, such that their statements regarding their accreditation status are entitled to protection under the First Amendment.

The Plaintiffs filed their Second Amended Complaint on December 22, 2005. The Plaintiffs moved for partial summary judgment as to their unfair and deceptive trade practices claim and their negligence claim, and the Defendants countered with two separate motions for partial summary judgment (both arguing that HRS chapter 446E is unconstitutional).[4]

## III. *STANDARDS OF REVIEW*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or

---

**2.** Complaint at 2; Answer at 2–3.

**3.** The Plaintiffs allege this in their briefs, but there is no evidence outside the briefs to support this claim.

**4.** On August 28, 2006, the State of Hawaii moved for leave to file an Amicus Curiae Brief in support of the constitutionality of HRS § 446E–5(f); pursuant to 28 U.S.C. § 2403(b) and Rules 7 and 24(c) of the Federal Rules of Civil Procedure, the court granted the motion the same day. The State submitted its brief on August 30, 2006, and on September 19, 2006, the State filed an Amicus Curiae Brief in support of the constitutionality of HRS § 446E–3.

defenses[.]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley,* 192 F.3d 1252, 1258 (9th Cir.1999) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

As to the Defendants' constitutional challenges, "[t]he constitutionality of a statute is a question of law[.]" *Ass'n of Nat. Advertisers, Inc. v. Lungren,* 44 F.3d 726, 731 (9th Cir.1994). As to the Plaintiffs' negligence claim, the court has jurisdiction over this matter based on diversity of citizenship; as such, the court applies Hawaii state law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## IV. *ANALYSIS*

### A. *HICP Violated HRS § 446E–2*

The Plaintiffs allege that the Defendants violated HRS § 446E–2, which provides that any unaccredited institution shall make the following disclosure whenever the unaccredited institution "includes in its catalogs, promotional materials, or contracts for instruction any other information relating in any manner to accreditation":

(Name of Degree Granting Institution) IS NOT ACCREDITED BY AN ACCREDITING AGENCY RECOGNIZED BY THE UNITED STATES SECRETARY OF EDUCATION.
Note: In the United States, many licensing authorities require accredited degrees as the basis for eligibility for licensing. In some cases, accredited colleges may not accept for transfer courses and degrees completed at unaccredited colleges, and some employers may require an accredited degree as a basis for eligibility for employment.

HRS § 446E–2(a). The Plaintiffs have proffered printouts of two pages from HICP's website discussing HICP's accreditation status. *See* Plaintiffs' Memo Ex. A ("The [HICP] is actively seeking accreditation with the [ACPE]."); Plaintiffs' Memo Ex. B ("The [HCIP] has submitted an application for accreditation for its Doctor of Pharmacy program."). Neither of these web pages includes the required disclosures.[5] There is no question that PES has violated HRS § 446E–2(a); consequently, the court GRANTS summary judgment in favor of the Plaintiffs as to their claim against PES.[6]

### B. *HICP Violated HRS § 446E–5(f); this Statute is Constitutional*

The Plaintiffs contend that the Defendants also violated HRS § 446E5(f) by telling prospective students that HICP had applied for accreditation. HRS § 446E–5(f) provides that "[n]o unaccredited institution shall disclose in any catalog, pro-

---

5. Exhibit A contains a partial disclosure only, stating that "the Hawaii College of Pharmacy is not accredited by an accrediting agency recognized by the United States Secretary of Education." The remainder of the required disclosure is absent. Exhibit B does not contain any part of the disclosure required by HRS § 446E–2(a).

6. HRS § 446E–2 applies to "[a]ny unaccredited *institution*" (emphasis added); as such, the statute prohibits HICP (and, by extension, PES) from engaging in certain acts. As discussed more fully *infra,* Criswell and Monroe may be liable for HICP's actions, but for purposes of HRS § 446E–2, the only relevant question is whether *HICP* violated the statute. Again, there is no doubt that HICP violated this statute.

motional material or written contract for instruction that it has applied for future accreditation."[7] There is no question that HICP made statements relating to its application(s) for future accreditation, *see, e.g.,* Plaintiffs' Memo Exs. A & B, and the court finds that the Plaintiffs are entitled to summary judgment as to their claim that HICP violated HRS § 446E–5(f).[8]

The Defendants do not contest the allegations that HICP made statements regarding its applications for accreditation. Instead, they argue that these "violations" of HRS § 446E–5(f) are meaningless because HRS § 446E–5(f) is an unconstitutional infringement on HICP's right to free speech.

The Defendants' argument is without merit, as discussed below. First, the court concludes that the speech at issue is commercial speech; consequently, the court applies the four-factor test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 561–62, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) to determine whether HRS § 446E–5(f) is unconstitutional. Second, the court concludes that HICP's speech is at least potentially misleading and that the State has met its burden of proving all the *Central Hudson* factors; as such, HRS § 446E–5(f) is not an unconstitutional restriction on free speech. Each of these issues is addressed in turn.

### 1. The speech at issue is commercial speech

There is no question that the statements regarding HICP's accreditation status fall into the category of commercial speech. As the Supreme Court has explained, commercial speech is

> expression related solely to the economic interests of the speaker and its audience. The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information. In applying the First Amendment to this area, we have rejected the "highly paternalistic" view that government has complete power to suppress or regulate commercial speech.

*Central Hudson,* 447 U.S. at 561–62, 100 S.Ct. 2343 (citations omitted). Although commercial speech is entitled to some protection, the Supreme Court has long recognized that "[t]he Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression," *id.* at 562–63, 100 S.Ct. 2343, because of " 'the "commonsense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.' " *Id.* at 562, 100 S.Ct. 2343 (quoting *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)).

■ In *Central Hudson,* the Supreme Court set forth the following test to deter-

---

**7.** "Unaccredited institution" is defined as "a degree granting institution that is not accredited or a candidate for accreditation by at least one nationally recognized accrediting agency that is listed by the United States Secretary of Education." HRS § 446E–1. In other words, HRS chapter 446E does not prevent a school that has reached "Candi-

date" status from advertising that fact to prospective students.

**8.** *See* note 7, *supra.* As with HRS § 446E–2, the relevant inquiry for purposes of HRS § 446E–5 is whether HICP violated the statute; the court concludes that HICP did violate the statute.

mine whether a governmental regulation of commercial speech (such as HRS § 446E–5(f)) is constitutional:

> [T]he validity of a restriction on commercial speech depends on the following factors: (1) "whether the expression is protected by the First Amendment," which requires the speech to "concern lawful activity and not be misleading"; (2) "whether the asserted governmental interest is substantial"; (3) "whether the regulation directly advances the governmental interest asserted"; and (4) "whether [the regulation] is not more extensive than is necessary to serve that interest."

*Ballen v. City of Redmond,* Nos. 04–35606, 04–35758, 2006 WL 2640537, *6–7 (9th Cir. September 15, 2006) (quoting *Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343) (final alteration in original).

■ The State of Hawaii has the burden of proving that HRS § 446E–5(f) is constitutional. *Edenfield v. Fane,* 507 U.S. 761, 770–71, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) ("[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it. . . . [A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." (Citations and internal quotation signals omitted.)). "Under this intermediate scrutiny, the asserted governmental interest must be 'substantial', rather than 'compelling', and the regulation adopted must 'directly advance' this interest, rather than be 'precisely drawn'." *Ass'n of Nat'l Advertisers, Inc. v. Lungren,* 44 F.3d 726, 729 (9th Cir. 1994).

### 2. HICP's speech is at least potentially misleading

■ "The government may ban forms of communication more likely to deceive the public than to inform it[.]" *Central Hudson,* 447 U.S. at 563–64, 100 S.Ct. 2343. Where commercial speech is deceptive, the speech is not entitled to protection under the First Amendment. *See Am. Acad. of Pain Mgmt. v. Joseph,* 353 F.3d 1099, 1106 (9th Cir.2004) ("[T]he first inquiry is whether the speech is unlawful or misleading. If it is either, then the commercial speech is not protected at all by the First Amendment.").

There are two types of "misleading" speech: "inherently" misleading speech and "potentially" misleading speech. As the Supreme Court explained:

> [W]hen the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive. . . . [T]he remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation.

*In re R.M. J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). In other words, if the speech is inherently misleading, the inquiry ends and the government restriction on the speech will be upheld; if the speech is only potentially misleading, the State must prove that the remaining three *Central Hudson* factors are satisfied. *See id.; Am. Acad. of Pain Mgmt.,* 353 F.3d at 1107.

In the instant case, the State has demonstrated that the commercial speech at issue is at least potentially misleading. The statement that a school has applied for accreditation gives no information to a

potential applicant (other than informing the applicant that the school is *interested* in becoming accredited). The mere fact that an unaccredited school has applied for accreditation says nothing about its chances for becoming accredited or its progress towards meeting accreditation standards. This court could hold itself out as having applied for accreditation merely by sending a letter to ACPE stating that the court wishes to become a pharmacy school. Whereas the status of "Candidate" for accreditation is a significant achievement (as it indicates that a school has met most of the requirements for accreditation, the ACPE has conducted an on-site evaluation of the school, and the ACPE has awarded the school the status of "Candidate" [9]), the status of "applicant" for accreditation simply carries no informational value. Instead, the statement that a school has applied for accreditation is confusing to potential students: students may not understand that "Candidate" for accreditation is a significant achievement, whereas "applicant" for accreditation is not; students may believe that the school is on the verge of becoming accredited, when in fact the school is nowhere near reaching this goal; and students may believe that school administrators are actively seeking accreditation, while school officials may be utterly nonchalant about accreditation. *See* Hse. Stand. Comm. Rep. No. 597, in 1999 House Journal, at 1239 ("[The Department of Commerce and Consumer Affairs] proposed amendments [to HRS § 446E–5] to further prevent unaccredited institutions from misleading consumers by referring to 'pending accreditation' in promotional materials. This practice has caused much confusion among consumers."). Students

may believe that a school would not have applied for accreditation if the school had not already met all the requirements for accreditation, when in fact *any* school can apply for accreditation at *any* time. This commercial speech—an unaccredited school's statement that it has applied for future accreditation—is at least potentially misleading.

The court is certainly aware of the dangers involved in restricting speech based on the State's belief that consumers are too unsophisticated to discern the truth. As the Supreme Court has explained, "we view as dubious any justification that is based on the benefits of public ignorance. . . . [T]he preferred remedy is more disclosure, rather than less." *Bates v. State Bar of Arizona,* 433 U.S. 350, 375, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The Defendants argue that HICP should be allowed to advertise the fact that they have applied for accreditation, so long as they make clear that HICP is unaccredited. The court disagrees. The Supreme Court's statement in *Bates* is premised on the notion that consumers will benefit from the information contained in the commercial speech, despite the government's concerns that the information is incomplete or potentially misleading. In the instant case, the information that HICP wishes to convey to prospective applicants—that HICP has "applied" for accreditation—is virtually meaningless. The court simply does not see how consumers could benefit from receipt of this information. The information is at least potentially misleading.

**3. The State has met the three remaining *Central Hudson* factors**

The State has the burden of demonstrating that HRS § 446E–5(f) meets the re-

---

**9.** *See* Accreditation Council for Pharmacy Education, Policies and Procedures for Accreditation of Professional Degree Programs, http://www.acpe-accredit.org/deans/policies.

asp (last visited Oct. 9, 2006) (defining, *inter alia,* "Precandidate status," "Candidate status," and "Preaccreditation status").

maining three *Central Hudson* factors to justify the restriction on HICP's speech. The State has met its burden. The court addresses each of the three remaining factors in turn.

a. *The State of Hawaii has asserted a substantial interest to be achieved by HRS § 446E–5(f)*

■ The State has articulated a substantial interest in ensuring that consumers have accurate information before spending considerable amounts of time and money to attend an unaccredited institution (whose costs may substantially outweigh the benefits). Protecting consumers from fraud and deception is a substantial interest and has been recognized repeatedly by the Supreme Court. *See, e.g., Edenfield v. Fane,* 507 U.S. 761, 769, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) ("[T]here is no question that Florida's interest in ensuring the accuracy of commercial information in the marketplace is substantial."); *Friedman v. Rogers,* 440 U.S. 1, 15, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979) ("It is clear that the State's interest in protecting the public from the deceptive and misleading use of optometrical trade names is substantial and well demonstrated."). Thus, the State has satisfied the second *Central Hudson* factor.

b. *The restriction contained within HRS § 446E–5(f) directly advances the State's interest*

HRS § 446E–5(f) directly advances the State's interest in ensuring that prospective students have accurate information when deciding whether to attend a particular school. The statute prevents schools like HICP from cultivating the false impression that accreditation is imminent, thus luring unwitting students into spending thousands of dollars and years of their lives on a worthless diploma. The statute directly advances the State's interest by eliminating confusion between schools that are (1) accredited, (2) "Candidates" for accreditation, and (3) unaccredited. It ensures that a prospective student, trying to decide between one school that is a "Candidate" for accreditation and one that is unaccredited, is not misled into thinking that two schools are at the same stage in the accreditation process. The state has met this third prong of the *Central Hudson* test.

c. *HRS § 446E–5(f)'s limitation on expression is designed carefully to achieve the State's goal*

■ In *Central Hudson,* the Supreme Court stated that "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." *Central Hudson,* 447 U.S. at 564, 100 S.Ct. 2343. The Supreme Court has since explained that a governmental restriction need not be as narrow as possible; as the Court stated in *Greater New Orleans Broadcasting Association, Inc. v. United States,* 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999):

> The Government *is not required to employ the least restrictive means conceivable,* but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest—"a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served."

(Quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).) (Emphasis added.)

In the instant case, HRS § 446E–5(f) is narrowly tailored to meet the State's goals. The prohibition, on its face, is extremely limited. It applies only to unaccredited

institutions (other than those with "Candidate" status) from stating that they have applied for accreditation. HICP is not prohibited from advertising to prospective students: it can discuss all its attributes—faculty, buildings, curriculum, library, career services office, and so on—without running afoul of HRS § 446E–5(f).[10]

Further, the sole prohibition, precluding HICP from telling students that it has applied for accreditation, should have no impact on an unaccredited institution such as HICP: as discussed *supra*, the mere fact that a school has applied for accreditation is virtually meaningless, and there is no legitimate reason why HICP would want to share this "information" with prospective students. Although there may be other, less restrictive means by which the State could achieve its goals, the State is not required to come up with the least restrictive alternative; it is only required to devise a reasonable regulation that is proportionate to the State's interest.[11] *Greater New Orleans Broad.*, 527 U.S. at 188, 119 S.Ct. 1923. In short, HRS § 446E–5(f) satisfies the fourth and final *Central Hudson* factor and is therefore constitutional.

## C. HICP Committed an Unfair or Deceptive Trade Practice in Violation of HRS § 480–2

■ HRS § 446E–3 provides that "[a]ny person who violates this chapter shall be deemed to have engaged in an unfair or deceptive act or practice pursu-

---

10. The Defendants argue that HRS § 446E–5(f) conflicts with Guideline 19.1 of ACPE's Accreditation Standards and Guidelines. Guideline 19.1 provides:

> A current catalog and/or other documents should be available which include at least the following: the mission, goals, and objectives of the professional program in pharmacy; the curricular plan, courses, and credit hours; resources available to effect the curriculum; admissions and progressions criteria and policies; off-campus curricular requirements; graduation requirements; tuition and fees, including refund policies; graduation and placement rates; *current accreditation status of the program;* recent pass rates on standardized licensure examinations; and expectations for attitudes, values, traits and ethics as put forth by the profession.

Defendants' Concise, Ex. 9 (emphasis added). The Defendants' argument is without merit. The ACPE Guidelines in no way conflict with HRS § 446E–5(f); in fact, chapter 446E *requires* unaccredited institutions to disclose the fact that they are unaccredited. HRS § 446E–2(a) ("Any unaccredited institution shall disclose in all catalogs, promotional materials, and contracts for instruction, the fact that the institution is not accredited by any nationally recognized accrediting agency listed by the United States Secretary of Edu-

cation."). The restriction in HRS § 446E–5(f) prevents an unaccredited institution from disseminating potentially misleading information, but the restriction does not prevent institutions from including current accreditation status in their promotional materials (as required by Guideline 19.1).

11. The Defendants also argue that the Hawaii Legislature, rather than suppressing speech (by prohibiting schools like HICP from stating that they have applied for accreditation), should have required *additional* disclosures as recommended by *Bates v. State Bar of Arizona*, 433 U.S. 350, 375, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The Defendants do not suggest any such clarifying language, however, other than the tautology "until accreditation is granted, the institution is still an unaccredited institution." Defendants' Counter Motion for Summary Judgment as to HRS § 446E–5 at 15. Furthermore, requiring the Legislature to cement a particular disclosure in a statute is not necessarily a viable option, given that accrediting institutions could change their terminology and/or practices at any time (requiring a statutory amendment to avoid additional consumer confusion). Even if the court or the Legislature could conceive of some clarifying language that would address the State's concerns, however, the court need not strike the language that the Legislature ultimately chose.

ant to section 480–2." [12] As discussed *supra*, HICP violated HRS chapter 446E; consequently, HICP (and, accordingly, Defendant PES) has committed an unfair or deceptive act as defined in HRS § 480–2.[13]

The Defendants argue that HRS § 446E–3 is unconstitutional because it deprives them of property without due process. Specifically, they argue that HRS § 446E–3 shifts the burden of proof from the Plaintiffs to the Defendants and that this burden shifting is unconstitutional.

The Defendants' argument lacks merit. HRS § 446E–3 is definitional; in other words, it provides a definition for the terms "[u]nfair methods of competition and unfair or deceptive acts or practices" as used in HRS § 480–2. The Hawaii Legislature easily could have amended HRS chapter 480 to include this definition—that is, the Hawaii Legislature could have amended HRS chapter 480 to state that an unaccredited institution commits an unfair or deceptive trade practice when it discloses that it has applied for future accreditation—and the Legislature's decision to place this definition in chapter 446E, rather than chapter 480, does not violate the Defendants' due process rights. This definition does nothing to shift the burden of proof: a prospective plaintiff in a § 480–2 action must still prove that the defendant committed the unfair or deceptive trade practice (in this case, for example, the Plaintiffs must prove that the Defendants unlawfully advertised that they had ap-

plied for accreditation) and must still prove causation and damages. Simply put, the Defendants' argument is ridiculous.

**D.** *There is a Genuine Issue of Material Fact as to Causation; the Court Declines to Rule on the Issue of Damages Before Ruling on Causation*

The only evidence in the Record that the Plaintiffs were injured by the Defendants' unlawful statements comes in the Robert Killian's Declaration, in which he states: "Had I been told the truth by HICP I would never have enrolled into an unaccredited pharmacy school that had no application pending before the ACPE or any approval from the ACPE." Declaration of Robert Killian at 5. Fabiola Killian's Declaration alleges that she was damaged by HICP, but the Declaration does not precisely explain how HICP's misleading statements injured her. The Defendants, on the other hand, argue that HICP was clear in advertising itself as an unaccredited institution and that HICP provided a quality education to its students. *See* Declaration of Monroe; Declaration of Criswell. At this time, the court finds that there is a genuine issue of material fact as to causation, such that summary judgment is inappropriate.

The Plaintiffs have also put forth substantial evidence of their damages. To avoid putting the cart before the horse,

---

**12.** HRS § 480–2, entitled "Unfair competition, practices, declared unlawful," provides in relevant part:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
>
> .    .    .    .    .
>
> (e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

**13.** As discussed *supra*, HICP violated HRS chapter 446E; consequently, HICP is the entity liable for the HRS § 480–2 violation. Although Criswell and Monroe may be individually liable for HICP's actions, *see infra*, the Plaintiffs' HRS § 480–2 claims against Criswell and Monroe are based on violations of HRS chapter 446E (rather than on some other unfair or deceptive trade practice independent of HRS chapter 446E).

however, the court declines to rule on the issue of damages at this time; instead, to the extent the Plaintiffs are moving for summary judgment on the issue of damages, the Plaintiffs' request is DENIED without prejudice.

### E. *HICP Was Negligent; There Are Genuine Issues of Material Fact as to Whether Criswell and Monroe Were Negligent*

As discussed *supra*, HICP clearly broke the law in developing and disseminating its promotional materials. Based on these statutory violations, the court concludes that HICP was negligent and therefore GRANTS summary judgment in favor of the Plaintiffs.[14] *See Lee v. Corregedore*, 83 Hawai'i 154, 172, 925 P.2d 324, 342 (1996) ("Duty in a negligence action may be defined by common law or by statute. '[T]he standard of conduct may be defined and established by a legislative enactment which lays down requirements of conduct, and provides expressly or by implication that a violation shall entail civil liability in tort.'" (Quoting Restatement (Second) of Torts § 285 comment b (1965).) (Footnote omitted.) (Alteration in original.)).

The record is not clear, however, as to the role that Criswell and Monroe played in developing and disseminating these promotional materials, such that there is a genuine issue of material fact as to whether Criswell and Monroe were negligent. Therefore, the court GRANTS summary judgment in favor of the Plaintiffs as to their negligence claim against PES but DENIES summary judgment as to the Plaintiffs' negligence claim against Criswell and Monroe.

### F. *Although HICP Violated HRS Chapters 446E and 480 and Was Negligent, the Court Does Not Rule on Whether the Plaintiffs Can Pierce the Corporate Veil to Recover against Criswell and Monroe*

At this time, the Plaintiffs are not asking the court to determine whether Criswell and Monroe may be held liable or whether the Plaintiffs' recovery will be limited to PES's assets. Although the court concludes that HICP broke the law, the court does not address the issue of whether the Plaintiffs are entitled to pierce the corporate veil and recover directly from Criswell and Monroe.

## V. CONCLUSION

For the foregoing reasons, the court rules as follows: (1) the court GRANTS summary judgment in favor of the Plaintiffs as to the First and Third Causes of Action in the Second Amended Complaint (HRS chapters 446E and 480 and Negligence) with respect to PES; (2) the court DENIES summary judgment as to the First and Third Causes of Action in the Second Amended Complaint with respect to Criswell and Monroe; and (3) the court DENIES the Defendants' Counter Motion for Partial Summary Judgment as to HRS § 446E–5 and the Defendants' Motion for Partial Summary Judgment as to Constitutionality of HRS § 446E–3.

IT IS SO ORDERED.

---

14. Of course, the Plaintiffs must still prove causation and damages to recover on their negligence claims against HICP.